## No. 642

### First Circuit

## WEST v. INDUSTRIAL LUMBER CO.

(June 9, 1930.   Opinion and Decree.)
(June 30, 1930.   Rehearing Refused.)
(August 7, 1930.   Writ of Certiorari and Review Refused by Supreme Court.)

Julius T. Long, of Shreveport, attorney for plaintiff, appellant.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellee.

MOUTON, J. Plaintiff alleges that on March 21, 1929, while in the employ of defendant company, he was struck by a knot or other object just above the left eye, severing the skin, causing considerable concussion to his brain, injury to his nerves and head, which, in consequence of said blow, has resulted in a serious and permanent injury and impairment of his brain, nerves, and left eye, to such an extent that he has since not been able to do work of any reasonable character, and will continue to be so incapacitated in the future, and that he has lost sight in his left eye for all practical purposes.

He further alleges that on July 5, 1922, during his employment at that time with defendant company, while the company was engaged in dynamiting a stump on its premises, in connection with its business, an explosion occurred which blew him down, burning his face, eyes, and head; seriously and permanently injuring both eyes

and his brain, which necessitated the removal of his right eye, causing him to lose about four months of work; that he returned to his work after the explosion, continued therein at the same wages, at the same position, having slight pains, peculiar feelings in his left eye, brain, and head, but not sufficient to prevent him from working; that during that time he knew of no serious injury to his nerves, left eye, or brain, and that physicians, after examining him, said there were no serious or permanent injuries to his brain, eye, or nerves, other than to the eye removed.

He further alleges that the blow he received in March, 1929, acting on his previous injured and weakened condition, above described, either caused or materially aided in producing his present and future disabilities and impairments of which he complains.

In the alternative he avers that if the court hold that the blow of March 21, 1929, did not cause or materially aid in bringing about his present troubles and disabilities, then he avers that they were produced by the dynamite explosion of 1922. As he avers that he was paid compensation by defendant company for the loss of his right eye in 1922, we shall not comment on the cause of its loss, except in so far as it may have caused or materially aided to produce his alleged present disabilities and impairments.

## PRESCRIPTION

We shall at the outset consider the plea of prescription of one year filed by defendant under section 31, Act No. 20, of 1914, as to the injury for the accident alleged to have occurred in 1922.

In Guderian v. Sterling Sugar & Ry. Co., 151 La. 59, 91 So. 546, decided in 1922, the

court held that the prescription began to run from the time plaintiff became aware of the injury, and not from the actual date of the injury.

Section 31, Act No. 20 of 1914, as amended by Act No. 85 of 1926, reads that the action of the employee is barred, unless brought within one year, not from the injury or death as was provided in section 31 of act of 1914, but from the date of the "accident" or death of the employee.

On account of this substitution of the word "accident" in this statute for the previous word "injury" used in the prior law, the district judge held that prescription began to run from the date of the accident and not from the time knowledge of the injury was possessed by the employee, as was held in Guderian v. Sterling Sugar & Ry. Co., 151 La. 59, 91 So. 546.

Viewing the question in that light, the court held that any action plaintiff had, arising out of the accident of 1922, was prescribed. The word "accident" used in the act of 1926, as we read section 31 of that statute, has certainly no reference to the death of the employee, and unquestionably refers to any "injury" the employee might suffer. We do not think that any other interpretation would be consonant with the provisions of the statute, and would, if applied, be destructive of the liberal construction which our courts have given to the provisions of that statute and in favor of the employee.

The ruling of the lower court maintaining the plea of prescription is therefore overruled, and we shall therefore take into account any right of action that may exist in favor of plaintiff, growing out of the accident which he alleges occurred in 1922.

## MERITS

We will now pass on to a discussion of the merits of the case in, however, a reverse order to the one presented in the petition.

Firstly, as to whether the injuries complained of were caused by the effects on plaintiff of the dynamite explosion which occurred in July, 1922; and, whether, if not caused solely by that, if it had the effect of leaving the nerves or brain of plaintiff in such a weakened condition that it was aggravated by the blow on his left eye in March, 1929, which materially aided in bringing on his alleged present disabilities and impairments.

Secondly, if the foregoing is not shown, whether the blow he received on his left eye on March 21, 1929, has, independently of the effects of the explosion, caused the aforesaid troubles and injuries.

Plaintiff says that July 5, 1922, while walking along the place where the company was using dynamite to blow up a stump, that he was blown about fourteen feet by the force of the explosion, where he was picked up and carried to the hospital at Elizabeth. He remained there two or three days, as appears from the record, and was taken to Alexandria where his right eye was removed by Dr. Gandy of that city. He says he did not know what was going on when he got the first time to the hospital; that when he got on the train at Oakdale to go to Alexandria, part of the time he knew what he was doing, and part of the time he did not. He says, subsequently, in his testimony, that the only time he was unconscious was during his trip to Alexandria.

Mrs. West, plaintiff's wife, went to the Elizabeth Hospital the morning after the

accident, and says at that time he was conscious.

Dr. Mangham, who was in charge of the Elizabeth Hospital for the defendant company, says he was at that hospital when plaintiff was brought in. He was with him also when Dr. Gandy removed his eye at the Baptist Hospital in Alexandria, and that plaintiff never was at any time in an unconscious condition, before taking ether for the operation.

Dr. Gandy, who removed the ball of his right eye, says that plaintiff really felt that he was unconscious and that perhaps he had been before he saw him, but that he was not unconscious when he went on the operating table and in fact, not at all.

Under the testimony of these witnesses it must therefore be held that the proof does not show that plaintiff was in a state of unconsciousness from the effects of the dynamite explosion in 1922. We have dwelt upon this subject as unconsciousness usually follows a concussion of the brain, and particularly where there is a contusion of the brain, which, from the evidence of some of the physicians in the case, becomes a factor of serious consideration in properly solving the issues herein.

Dr. Mangham, who examined plaintiff at the Elizabeth Hospital soon after the injury of 1922, says at that time he did not show any symptoms of concussion or contusion of the brain.

Dr. Gandy, who removed his eye, says, while removing it, he showed no symptoms whatever of any brain injury.

An X-ray picture was taken by Dr. Myers in September, 1929, of plaintiff's head, and no injury to the skull or bony parts next to the right eye was found, where had occurred the injury received by him in 1922.

It seems to us that if the force of the explosion was of sufficient violence to cause a contusion of the brain, that the X-ray picture would have revealed some marks, however slight on, at least, the bony structure around the orbit of the right eye. The negative result obtained from that picture, when taken, in connection with the testimony on this subject, sustains the evidence of Dr. Mangham that no contusion resulted from the dynamite explosion, and of Dr. Gandy that there were no symptoms of any brain injury when plaintiff's eye was removed.

Dr. Cassidy, a prominent physician, plaintiff's witness, examined him in August, 1929, and, from the history of the case given him by plaintiff, and hypothetical questions propounded to him by counsel for plaintiff, concluded that he had suffered a contusion of the brain in the accidental explosion of the dynamite in 1922.

Dr. Sanderson, basing himself on these hypothetical inquiries, arrived at a similar conclusion in reference to the effects of that explosion.

The conclusions of Drs. Cassidy and Sanderson grounded, as they were, on an examination and hypothetical questions long after the accident of 1922, should not, we think, prevail over the examination of Dr. Mangham made immediately after the explosion over six years before Drs. Cassidy's and Sanderson's examinations, and who found neither concussion nor contusion of the brain, and of that of Dr. Gandy who says no brain injury was revealed during the operation for the removal of plaintiff's eye.

The effects of a concussion of the brain are not so serious as are those resulting from a contusion, and from which, as Dr. Cassidy explains, a person may recover in a few minutes or hours. In the case of a

contusion, he says, the tissues of the brain are broken or so disassociated that they do not always heal back in normal relationship. As the result of a contusion, which he concluded plaintiff had suffered in 1922, he says that a man may resume his work with a feeling his thought processes are interrupted, and he does not think quickly and accurately as before; has headaches frequently, suffers lapses · of memory, his disposition is somewhat changed, he is irritable, rendering him less efficient, which also disturbs his disposition. Outside of a pain in the back part of his head which plaintiff says he suffered after the explosion, and which he says was "not enough to complain about," there is nothing to indicate that he was affected with any of the drawbacks or handicaps which Dr. Cassidy says usually follow a contusion of the brain. The fact is that he resumed his same work with defendant company, and continued in its service without complaint on either side, for over six years, and stopped only some time after he was injured in March, 1929.

We must therefore conclude that plaintiff suffered no contusion of the brain in 1922, which could have been the cause of his alleged disabilities or impairments, and, as he could have no dormant trouble resulting from a contusion or· concussion which ,had never happened, the blow he received in 1929 could not have activated or aggravated a diseased condition that did not exist, so as to bring the case under the operation of the doctrine announced in the case of Behan v. Honor Co., 143 La. 348, 78 So. 589, L. R. A. 1918F, 862, and approved in many subsequent decisions.

We now pass to the consideration of the results of the blow he received in March, 1929, from which plaintiff alleges he suffered a considerable concussion of the brain, injury to his head and nerves to which he, as a result, ascribes his alleged serious and permanent impairment to his left eye, nerves, and brain.

The day after the accident in March, 1929, plaintiff was examined by Dr. Mangham. The doctor says he had a slight abrasion over his left eyebrow and that he had no serious injury, and showed no symptoms of a concussion or contusion of the brain. As the doctor could see nothing the matter with plaintiff, he sent him to Dr. Gandy, an eye specialist, of Alexandria.

Dr. Gandy found a slight contusion to the eyebrow, no injury to the eyeball, which the doctor says is now perfectly normal.

It is nowhere indicated in his testimony that plaintiff had suffered any injury whatsoever to the brain resulting from any concussion of that organ. The left eye of the plaintiff was also examined in September, 1929, by Dr. Peters, an eye specialist, to whom plaintiff had gone for consultation of his own accord. After a thorough inspection of the eye, the doctor discovered a comparatively small refractory error, but says that the optic nerve was normal which was evidenced by test of color perception, and other recognized tests. He says he had a refractory error calling for eyeglasses.

He was also examined by Dr. Simmons, a practitioner of thirty-six years experience, some time in October, 1929, subsequent to plaintiff's second injury. This doctor says plaintiff appeared to him to be in his natural state of mind and composure, and found nothing indicating mental abnormality.

The evidence of these physicians shows that plaintiff suffered no concussion of the brain by the effects of the injury he received in 1929, and none of the results to

his nerves, left eye, or brain, as by him alleged.

As our guide for that conclusion, we must, to a large extent, accept the result of the examinations made by these medical experts or else we might fall into the ready omniscience of the uninformed.

Plaintiff was also examined by Dr. May, a specialist of many years experience in nervous and mental diseases. He made the examination at the time the case was tried, and found no abnormal neurological manifestations and no indication of any brain injury. He did not discover any hysteria or epilepsy. He says he thinks that his second injury had the effect of merely frightening or upsetting plaintiff, as there was no physical evidence of any bodily disturbance or of his logical thinking, that he had a fear reaction that came from his recent injury and which caused the symptoms, such as headaches, throwing up, dizziness, which were referred by plaintiff, his wife, and relatives, as spells with which they say he is suffering. He thought that for the present plaintiff should not do work associated with any danger, but stated that the condition which resulted from these fear reactions, he did not think, were permanent. He said those in that condition are inclined unconsciously to exaggeration.

We find, from the foregoing consideration of the case, that plaintiff has failed to show the "permanent disabilities and impairments," upon which his action is grounded, with that legal certainty the law requires, and that his demand was properly rejected.