Argued January 16; affirmed April 2; rehearing denied
May 14, 1935

# PIUKKULA ET AL. *v.* PILLSBURY ASTORIA FLOURING MILLS CO.

(42 P. (2d) 921, 44 P. (2d) 162)

*Frank C. Hesse,* of Astoria (Hesse & Franciscovich, of Astoria, on the brief), for appellants.

*Lawrence Lister,* of Portland (E. L. McDougal, of Portland, on the brief), for respondent.

ROSSMAN, J. Omitting mention of formal matters, the complaint (amended) alleges that the defendant conducts a flour manufacturing business in a building equipped with power-driven machinery. The sacked flour moves down a chute from the manufacturing room to the storage room where it is trucked by workmen to other places. These operations create flour dust "and the air in and about defendant's said enclosed workrooms is heavily charged and impregnated therewith which, if permitted to enter the respiratory organs of its employees working therein, and inhaled by them into their lungs is, if continued for any substantial or great length of time, dangerous and very detrimental to their health and calculated to produce or engender pneumonia, asthema, and other similar pulmonary sicknesses and disorders and diseases of injurious character". Defendant's operations subjected its employees to risk and danger because (1) the operations were conducted in the presence of machinery; and (2) the air in the room at the lower end of the chute was dustladen. The defendant failed to install in its storage rooms "dust elimination or catching devices, machinery, apparatus, contrivances or contraptions of sufficient power or capacity so as to prevent the air and atmosphere in and about said workrooms of its plant, where said deceased was required to perform the duties of his employment, as hereinafter mentioned, to so become charged or impregnated with such dust, dirt, flour dust or other refuse and impurities, and * * * failed to provide its said employees * * * with dust masks, wet sponges or other similar dust elimination and catching devices * * * and negligently and

carelessly and recklessly failed to use every care and precaution which it was practicable to use for the protection and safety of the life and limb of its employees''. August 28, 1929, when the defendant acquired the aforementioned plant from the Astoria Flouring Mills Company, Piukkula became one of its employees and worked for it as a trucker in the storage room. His duties required him to receive sacks of flour from the end of the aforementioned chute, pile them on his truck and convey them to the places selected by defendant. Piukkula was constantly engaged in this work until January, 1931. "On account and as a direct proximate result of defendant's said aforementioned acts of negligence, and the resulting inhalation by said deceased during his said period of employment with defendant of such flour dust and other impurities, the system of said deceased, unbeknown to him, became poisoned, sensitized and otherwise affected, weakened and impaired thereby to the extent that said deceased, about September 17, 1930, began noticing difficulties in breathing, but his said condition at that time did not appear to be serious so as to cause alarm or lead said deceased to believe that his condition was serious, and that in order to recuperate from his said condition, said deceased, upon the advice of his said physician, did temporarily quit his employment with defendant during said month of January, 1931, and resorted to salmon fishing and other out-of-door work, as a result of which his health at first began to improve, but during the winter months of 1931-1932 his condition gradually began and thereafter in slowly progressive stages continued to get worse." By January 22, 1933, the illness had made sufficient progress so that Piukkula entered a hospital "which was the first time that plaintiff (Piukkula) realized the extent and seriousness of his

said ailment''. June 8, 1933, Piukkula instituted an action in the circuit court against defendant for damages to his health, occasioned by the circumstances aforementioned to which defendant interposed a demurrer on the ''ground that the said complaint did not state facts sufficient to constitute a cause of action, but at the hearing of said demurrer argued that said deceased's cause of action was barred by the statute of limitations''. October 24, 1933, the demurrer was overruled ''on the ground that by not assigning the statute of limitations as a ground of its said demurrer, under the statute * * * had waived said defense''. October 27, 1933, defendant filed an amended demurrer ''assigning therein as the sole and exclusive ground the running of the statute of limitations against said cause of action''. Piukkula moved to strike the amended demurrer from the files on the ground that the defendant had waived the bar of limitations period by not mentioning it in its first demurrer, and also on the ground that the procedure makes no provision for amended demurrers. November 14, 1933, the motion was sustained. The defendant then filed an answer in which ''as a third, further and separate answer and defense'' it plead the statute of limitations. Piukkula moved to strike this portion of the answer ''for the reason and on the ground that if the two-year statute of limitations is applicable to deceased's said cause of action, that the running of the statute of limitations appeared upon the face of said plaintiff's complaint, and the defendant, by not having demurred to said complaint on said ground, waived the defense''. The motion was sustained. Before any further action was taken Piukkula died (December 14, 1933) ''from the effects of said poisoning, sensitization, ailment, illness and occupational disease''. January 22, 1934, the court

dismissed the action. By reason of defendant's "said continued and persistent re-assertion in said deceased's action of said defense of the statute of limitations, after it had waived the same by not assigning it as a ground of its original demurrer, a great deal of time was lost, and decedent's said action was thereby prevented from being at issue and from being tried, and said deceased was prevented from recovering in his lifetime a judgment". Defendant thereby became estopped to avail itself of the defense of the statute of limitations in the present action. The remaining allegations aver the age, condition of health, wages and contributions made by Piukkula to these plaintiffs during his lifetime. They also allege that the plaintiff Mary is the widow of Piukkula, and John is his 13-year old son. Twenty-five thousand dollars in damages is sought.

After portions of the complaint had been stricken out by an order which held them to be mere averments of conclusions, the defendant's demurrer, based upon a contention that the complaint itself showed that the action had not been commenced within the period of limitations, was sustained.

The plaintiffs' assignments of error challenge the order which struck parts of the complaint and also the order which sustained the demurrer. We shall now consider whether the complaint indicates that plaintiffs' cause of action has been barred by the statute of limitations, and as we do so we shall assume that no part of the complaint has been stricken.

The plaintiffs claim that their complaint shows that the defendant was engaged in operations which subjected its employees to risk and danger within the contemplation of § 49-1701, Oregon Code 1930, which was subdivision 1 of 1911 Session Laws, chapter 3, commonly known as the Employers' Liability Act; and that

it was the duty of the defendant to take the precautionary measure suggested in the complaint for the protection of its employees. They claim that the defendants' alleged neglect to adopt those measures was the cause of Piukkula's occupational disease and subsequent death.

According to the complaint, the defendant acquired its Astoria plant August 28, 1929, and on that day Piukkula entered its employ. The following dates are therefore important: August 28, 1929, Piukkula entered defendant's employ; September 17, 1930, he "began noticing difficulties in breathing"; January, 1931, he left defendant's employ; January 22, 1931, he entered a hospital, and for the first time realized the extent of his ailment; June 8, 1933, he began an action against the defendant; December 14, 1933, he died.

Section 49-1704, Oregon Code 1930, being subdivision 4 of 1911 Session Laws, chapter 3, provides:

"If there shall be any loss of life by reason of the neglect or failures or violations of the provisions of this act by any owner * * * the surviving widow or husband and children and adopted children of the person so killed, and if none, * *. * then the mother or father, as the case may be, shall have a right of action without limit as to the amount of damage which may be awarded; * * *"

Section 1-201, Oregon Code 1930, provides:

"Actions at law shall only be commenced within the periods prescribed in this title, after the cause of action shall have accrued; except where, in special cases, a different limitation is prescribed by statute."

Section 1-206, Oregon Code 1930, provides:

"Within two years,—(1) An action for * * * any injury to the person or rights of another, not arising on contract * * *."

■ Thus, we see that if the cause of action which the plaintiffs are seeking to prosecute against the defendant, assuming that one arose out of the events narrated in the complaint, "accrued" more than two years before the complaint was filed, and if the defendant has not been deprived of the right to interpose the statute as a bar, the demurrer was properly sustained. The plaintiffs argue that § 49-1704 is a death statute, not a survival nor a derivative statute, and that their right to maintain this action is not dependent upon whether Piukkula's action was barred by the statute of limitations. They claim that their cause of action did not arise until December 14, 1933, that being the day upon which Piukkula died. Defendant contends that the plaintiffs cannot maintain this action unless Piukkula was possessed of a cause of action at the time of his death, and that since he did not commence his action within two years of September 17, 1930 (that being the time when he noticed difficulties in breathing) he no longer possessed a cause of action when he filed his complaint (June 8, 1933), and that the plaintiffs, therefore, cannot maintain this action. In support of their contention, plaintiffs rely, in part, upon *Thompson v. Union Fishermen's Co-op. P. Co.*, 118 Or. 436 (235 P. 694, 246 P. 733); *Wilcox v. Warren Construction Co.*, 95 Or. 125 (186 P. 13, 13 A. L. R. 211); *Niemi v. Stanley Smith Lumber Co.*, 77 Or. 221 (147 P. 532, 149 P. 1033); *McClaugherty v. Rogue River Elec. Co.*, 73 Or. 135 (140 P. 64, 144 P. 569); *McFarland v. Oregon Elec. Ry. Co.*, 70 Or. 27 (138 P. 458, Ann. Cas. 1916B, 527); *Schleiger v. Northern Terminal Co.*, 43 Or. 4 (72 P. 324); and *Perham v. Portland Elec. Co.*, 33 Or. 451 (53 P. 14, 40 L. R. A. 799, 72 Am. St. Rep. 730).

Only a portion of these decisions were concerned with § 49-1704. The rest of them were concerned with

§§ 1-307 and 5-703, Oregon Code 1930. Section 1-307 provides that a parent may maintain an action, as plaintiff, for the injury or death of his child. Section 5-703 provides that when a death is caused by the wrongful act of another the personal representative of the deceased may maintain an action against the wrong-doer "if the former might have maintained an action had he lived" for damages to the extent of $10,000. The clause just quoted is not employed in § 49-1704. Previous decisions of this court have established that all three of these acts remain in effect; in other words, the enactment of the one did not repeal or abrogate the others.

The portions of those decisions which have application to our present problem point out that §§ 1-307, 5-703 and 49-1704 do not merely revive for the beneficiary the old cause of action possessed by the victim of the tort at the time of his death, but that they create in behalf of the beneficiary a new cause of action. The taking of the life, and not the injury to the deceased, is the basis of damage in the new action. They clearly establish that the acts are not survival statutes. To the decisions above cited should be added *Hawkins v. Barber Asphalt Paving Co.*, 202 Fed. 340, and *Kosciolek v. Portland Ry., L. & P. Co.*, 81 Or. 517 (160 P. 132). In the first of these two decisions Judge WOLVERTON, formerly a distinguished member of this court, in construing § 49-1704, held that that section of our laws "is akin to Lord Campbell's Act". In the second of the decisions just cited, this court declared:

"It is through her spouse that the plaintiff claims in the present instance; but, while he had control of the situation he released his cause of action, and, the source of her claim thus having been taken away, she has no standing to demand more."

That observation was made concerning § 5-703. Our previous decisions are therefore helpful, but fail to solve the entire problem which now confronts us.

The plaintiffs contend that the better reasoned and the larger number of the decisions hold that statutes similar to § 49-1704 create a new cause of action in favor of the relative, predicated upon the death of the injured employee, and that this new cause of action is independent of the cause of action that the victim of the wrong may have possessed. They cite 8 R. C. L., Death, p. 725, § 21, and 17 C. J., Death, p. 1239, § 86. In footnotes in the texts cited are collections of the decisions. See also *Flynn v. New York, N. H. & H. R. Co.,* 283 U. S. 53 (75 L. Ed. 837, 51 S. Ct. 357, 72 A. L. R. 1311) (annotated at p. 1313); *Goodyear v. Davis,* 114 Kan. 557 (220 P. 282, 39 A. L. R. 563) (annotated at p. 579); and 17 C. J., Death, §§ 39 and 50. An examination of the decision discloses that the statutes involved in them vary in their phraseology. This circumstance accounts to some extent for the difference in the results. Some courts found in the statutes confronting them an expressed or a necessarily implied provision that the cause of action created in behalf of the beneficiary, although new, is dependent upon the possession by the injured individual of a cause of action at the time of his death. Another group of courts construe their statutes to mean that a new cause of action is created in favor of the beneficiary and that it is available even though the injured employee possesses no cause of action at the time of his death. Another group of statutes, as construed by other courts, create no new cause of action, but merely provide for the transmission of the deceased's cause of action to the beneficiary and permit him to prosecute it to a conclusion. In 1910, after the federal courts had held

that the Federal Employers' Liability Act was not a survival statute, Congress amended it by adding a provision for the survival of the deceased's cause of action. See 36 Stat. at L. 291, chap. 143, § 1. For an application of this amendment, see *St. Louis & I. M. Ry. v. Craft,* 237 U. S. 648 (59 L. Ed, 1160, 35 S. Ct. 704). For a copy of the Alabama survival statute and its interpretation see *Williams v. Alabama Great Southern Ry. Co.,* 158 Ala. 396 (48 So. 485, 17 Ann. Cas. 516). 8 R. C. L. 725 states:

"The more general view, and the one which it is believed is based on better reasoning, is that statutes of this nature are not 'survival statutes,' but create a new cause of action, distinct from any that the deceased might have had had he survived."

From the annotation in 39 A. L. R. 579, we quote:

"By the great weight of authority, however, where the statute in effect gives a remedy to recover damages where the death of a person is caused by the negligent or wrongful act of another, such remedy depends upon the existence in the decedent, at the time of death, of a right of action to recover damages for such injury; hence, if by recovery of a judgment for damages due to the injury, or by a settlement with the wrongdoer, the injured releases his cause of action, such release, in the absence of fraud or mistake, will preclude a recovery by his personal representative."

From the annotation in 72 A. L. R. 1313, we quote:

"In the majority of jurisdictions it is held that the fact that the decedent had failed to bring his action for injuries within the limitation period is no bar to an action by his representative for the death resulting from the injury."

The courts which hold that the new cause of action created by statutes similar to § 49-1704 is independent of the cause of action possessed by the injured em-

ployee, now deceased, point out that the statute contains no provision making it dependent, and declare that the new (statutory) cause of action arises out of two circumstances: (a) the tortious act; and (b) the injured person's death. They stress the fact that the damages recoverable in the new action are not for the pain and pecuniary loss suffered by the injured workman, and for which he could have recovered damages in an action prosecuted by himself, but are for the loss which the beneficiary sustained by being deprived of the contributions which the deceased would have made had he continued to live. They point out that this new cause of action was never possessed by the deceased, and insist that he, therefore, could do nothing or leave nothing undone which could in any way affect the new cause of action created in behalf of the beneficiary. They hold that if he permitted the statute of limitations to run against his claim that circumstance does not affect the cause of action created by the statute. Some of these decisions go to the length of holding that a release executed by the deceased prior to his death, upon payment of damages to him, does not deprive the beneficiary of the cause of action given by the statute. Many of these authorities are collected and reviewed in *Goodyear v. Davis,* supra. Others may be found in the annotation in 72 A. L. R. 1313. The courts which hold that the statute creates a new cause of action, dependent, however, upon the possession by the injured party at the time of his death of a cause of action against the tort feasor, point to the fact that both causes of action arise out of the same tortious act. While they do not construe the statute as a survival statute, they, nevertheless, believe that one of the purposes of the act was to prevent the wrongdoer from escaping from the payment of damages by the inter-

position of death. These courts declare that during his lifetime the victim of a tort had the power to make settlement for all of the wrong done by the tort feasor. They point out that if the new right is not dependent upon the possession by the deceased of a right at the time of his death there would be virtually no statute of limitations applicable to the new right, and that, hence, the new action could be brought twenty years or more after the tort had been committed. In *Southern Bell Tel. & Tel. Co. v. Cassin,* 111 Ga. 575 (36 S. E. 881, 50 L. R. A. 694), the court declared that public policy was opposed to a construction which would render the new cause independent of the existence of the old and permit it to be brought long after the evidence of the alleged tortious act had been lost by the passage of time. In *Howard v. Bell Telephone Co.,* 306 Pa. 518 (160 Atl. 613), the fears to which we have just alluded were realized. There the new action was instituted more than twenty years after the alleged tort had been committed. The court held that the new action was dependent upon the existence of one in the injured party, now deceased, at the time of his death. Most of the courts, according to our interpretation of their decisions, hold that if the victim of the wrong permitted the prescription period to become a bar to a possible action by himself, or if he had executed a release, the statutory action created by acts similar to § 49-1704 can not be brought after his death.

As we have seen, we held in *Kosciolek v. Portland, Ry. L. & P. Co.,* supra, that the action authorized by § 5-703 can not be maintained if the injured party accepted satisfaction for the claim possessed by himself, and as we have further seen, we held in *McFarland v. Oregon Elec. Ry. Co.,* supra, that the action created by

§ 49-1704 is not merely a revival or a survival of the action possessed by the deceased during his lifetime. In *Flynn v. New York, N. H. & H. R. Co.*, supra, the Federal Supreme Court recently held that the cause of action created in behalf of the personal representative of an injured workman by the Federal Employers' Liability Act was dependent upon his possession of a right of action at the time of his death. In that case, one Flynn was injured December 4, 1923, died September 1, 1928, and the action was brought May 15, 1929. We quote from the decision, written by Mr. Justice Holmes:

"Obviously Flynn's right of action was barred, but it is argued that the right on behalf of the widow and children is distinct; that their cause of action could not arise until Flynn's death, and that, therefore, the two years did not begin to run until September 1, 1928, but the argument comes too late. It is established that the present right, although not strictly representative, is derivative and dependent upon the continuance of a right in the injured employee at the time of his death. Michigan C. R. Co. v. Vreeland, 227 U. S. 59, 70, 57 L. ed. 417, 421; 33 Sup Ct. 192; Ann. Cas. 1914C, 176. On this ground an effective release by the employee makes it impossible for his administrator to recover. Mellon v. Goodyear, 277 U. S. 335, 344, 72 L. ed. 906, 910, 48 Sup. Ct. 541. The running of the two years before the time when his cause of action accrued extinguishes it as effectively as a release, Engel v. Davenport, 271 U. S. 33, 38, 70 L. ed. 813, 817, 46 Sup. Ct. 410, and the same consequence follows. Our conclusion that this action cannot be brought is required by the former decisions of this court."

And in the Federal courts the time is computed, not from the appointment of the personal representative, but from the death: *Reading Co. v. Koons*, 271 U. S. 58 (70 L. Ed. 835, 46 S. Ct. 405). In *Michigan C. R. Co. v.*

*Vreeland,* 227 U. S. 59 (57 L. Ed. 417, 33 S. Ct. 192, Ann. Cas. 1914C, 176), the court said:

"But as the foundation of the right of action is the original wrongful injury to the decedent, it has been generally held that the new action is a right dependent upon the existence of a right in the decedent, immediately before his death, to have maintained an action for his wrongful injury."

It will be observed that the premises upon which *Flynn v. New York etc. Co.* was decided have their parallel, to some extent at least, in the previous decisions of our court. Those decisions hold that our legislation (§§ 1-307, 5-703 and 49-1704, Oregon Code 1930) does not merely revive the cause of action, if any, possessed by the deceased, but that it creates a new right of action, which will be defeated if the deceased executed a release for the wrong committed by the defendant. It is our belief that justice is more likely to be served, and the objectives of the statute attained, by holding that § 49-1704 creates a new right of action, but that the new right is dependent upon the possession by the deceased of a cause of action at the time of his death. Such is our construction of this statute.

■ But the question now occurs, does the statute of limitations begin to run from the time the tortious act was committed or from the time of the death. This inquiry is answered in *B. & O. S. W. R. Co. v. Carroll,* 280 U. S. 491 (74 L. Ed. 566, 50 S. Ct. 182), and in *Dusek v. Pennsylvania R. Co.,* 68 Fed. (2d) 131. In the latter decision many federal decisions are reviewed, including *Flynn v. New York, N. H. & H. R. Co.,* supra, and the conclusion is announced that the action for the wrongful death accrues on the date of the death, and the statutory period for the new cause does not begin to run until that day.

■ We come now to the problem of determining when Piukkula's cause of action accrued: August 28, 1929, when he entered defendant's employ; September 17, 1930, when he experienced difficulty in breathing; January, 1931, when he, for the last time, worked for the defendant; or January 22, 1933, when he, for the first time, realized the extent and seriousness of his ailment? Plaintiffs' brief, with commendable frankness, states: "Ordinarily, knowledge that a cause of action for tort has accrued in favor of a plaintiff is not necessary: 37 C. J. 897." From the authority just mentioned, we quote:

"In cases of injuries to the person where the action is not for death, the cause of action accrues and the statute begins to run at the time of the injury—but not until that time—notwithstanding the full extent of the injury is not then known or developed. * * *"

Plaintiffs contend, however, that when the injury takes the form of an occupational disease "the statute of limitations does not begin to run until the workman's condition of health becomes so serious that he realizes the extent of his disease". In support of this proposition they cite: *Carroll v. International Paper Co.,* (La.) 138 So. 907; *White v. Louisiana Western Ry. Co.,* 18 La. App. 544 (135 So. 255); *Thompson v. Tarver,* 17 La. App. 230 (135 So. 723); *Hoy v. T. S. Grayson Lumber Co.,* 15 La. App. 176 (130 So. 651); *West v. Industrial Lumber Co.,* 14 La. App. 224 (128 So. 678); *Guderian v. Sterling Sugar & Ry. Co.,* 151 La. 59 (91 So. 546); *Bagg v. Pickering Lumber Co.,* 7 La. App. 63; *Jones v. General A., F. & L. Assur. Corp.,* 1 La. App. 88; and *Jones v. Texas & P. Ry. Co.,* 125 La. 542 (51 So. 582, 136 Am. St. Rep. 339). In the cases just cited, with the exception of *Jones v. Texas & P. Ry. Co.,* the statute of limitations, which was applicable, provided: "In case

of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the injury or death the parties shall have agreed upon the payments to be made under this act, or unless within one year after the injury proceedings have been begun.'' Later, the act was amended by substituting the word ''accident'' for the word ''injury''. In all of these cases the plaintiffs were workmen and sought to recover the amount of compensation payable under Louisiana Compensation or Liability Acts. In all instances the amount recoverable was fixed by statute and was graduated according to the extent of the injury. In the above-cited decisions, with the exception of the last, the courts held that the limitation provision after amendment, as well as before, meant that the cause of action did not accrue, and that, therefore, the period of limitation did not begin to run until the nature of the injury had revealed itself.. But when *Carroll v. International Paper Co.*, supra, and *White v. Louisiana Western Ry. Co.*, supra, were decided by the supreme court (see 175 La. 315, (143 So. 275), and 174 La. 308 (140 So. 486),) a different result was reached. The word ''accident'' was interpreted literally, and, hence, failure to institute the proceeding within one year of the time when the untoward incident occurred barred recovery. In *Jones v. Texas & P. Ry. Co.*, the defendant's train collided with the plaintiff's mule. The decision describes the effect upon the mule thus: ''He was not even lamed, although he manifested a disinclination or disability to move faster than in a walk''. Two months later he died, and then for the first time it was discovered that he had received in the collision more than a superficial bruise. The Louisiana statute provided that prescription ''runs from the day the damages were sustained''. The court cited

several of its earlier decisions which held that under this statute prescription runs from the day the damages were sustained, and not from the day of the wrongful act. It held that the limitation period did not begin until the nature of the mule's injury revealed itself.

Another decision construing the Louisiana prescription statute applicable to actions instituted under the Louisiana Compensation Act is *McLaughlin v. Western Union Telegraph Co.*, 17 Fed. (2d) 574. In that case, according to the complaint, the workman suffered a severe injury June 1, 1922, but he claimed that he was not aware of its full extent until September of 1924. His action was instituted later. The Circuit Court of Appeals, in holding that his action was barred, commented upon *Jones v. Texas & P. Ry. Co.*, supra, and *Guderian v. Sterling Sugar & Ry. Co.*, supra, and then declared:

"If the theory of plaintiff be followed to a logical conclusion, a person might suffer a trifling injury in his youth and live to a ripe old age before bringing suit. The law does not contemplate such an absurdity. It is only when one does not know that he has suffered an actionable injury that the statute is tolled. Whether his damage be slight, or his injury apparently temporary, or that subsequent developments may entitle him to larger damages, is immaterial."

These Louisiana decisions, for self-evident reasons, are of but little help in the interpretation of §§ 1-201 and 1-206, Oregon Code 1930, previously quoted. The application of the period of limitation to an action in which it is claimed that an occupational disease was contracted is a difficult task. In the present instance, the difficulties are somewhat lessened by the circumstance that Piukkula did not become one of the defendant's employees until August 28, 1929; that on Septem-

ber 17, 1930, he noticed difficulties in breathing and was aware that he was suffering from an ailment of the lungs, although at that time "he did not believe that his condition was serious". January, 1931, he left the defendant's employ. If anything for which the defendant was responsible occasioned Piukkula's ailment, it must have occurred after August 28, 1929, and prior to January, 1931.

In *Calhoun v. Washington Veneer Co.*, 170 Wash. 152 (15 P. (2d) 943), the facts were that Calhoun was employed in the glue-mixing department of the defendant's factory from April 20, 1926, until the middle of May, 1928. Carbon bisulphide gases permeated the air in that department. According to the complaint, Calhoun "received, on November 17, 1928, a severe and permanent case of carbon bisulphide poisoning" but did not know of the dangerous character of the gases until long after November 17, 1928. September, 1931, he instituted an action against the defendant and died October 17, 1931. The administratrix of his estate was substituted as the party plaintiff, and she amended the complaint by alleging that the death was due to carbon bisulphide poisoning. The decision, in affirming the judgment of the superior court which held that the action was not brought within the limitation period, stated:

"His action, not having been commenced within the three-years after the middle of May, 1928, was not commenced within the time limited by law. * * * As we have heretofore determined, the cause of action accruing to Claude Calhoun under the Factory Act necessarily accrued about the middle of May, 1928. Appellant did not have a cause of action against the respondent because of the death of her husband, but because of the negligence of respondent. The negligence was the cause; the death was the result. Under the statute, the

claim for damages accrued, if at all, at the time of the injury to Claude Calhoun.''

In *Field v. Gazette Publishing Co.*, 187 Ark. 253 (59 S. W. (2d) 19), the plaintiff alleged that while he was in the defendant's employ as a linotype operator he became afflicted with a malady as the result of absorbing lead poison in the defendant's workroom. According to his testimony, he began working for the defendant January 4, 1924, and his malady first appeared in April, 1926. At that time he left the defendant's employ and underwent treatment by physicians. October, 1926, a toe was amputated because of his malady. November, 1926, the malady necessitated the amputation of his right foot. February, 1927, he returned to defendant's employ and continued working for it until September 1, 1927. September 5, 1927, his left foot was removed. December, 1927, he returned to the defendant's employ and remained until July, 1928, when a further portion of his left leg was amputated. He filed an action against the defendant June 10, 1929. In appealing from the judgment in favor of the defendant, he claimed that the trial court had erred when it instructed the jury: ''If you find that the plaintiff contracted the malady of which he complains previous to June 10, 1926, then you will find for the defendant.'' The limitation period was three years. In affirming judgment, the court stated: ''The great weight of American authority is to the effect that the cause of action arises and the statute of limitations begins to run from the date of the negligent act, and not from the time the extent of the injury may be ascertained.''

These decisions merely applied the principle that the cause of action arises, not when the entire scope of the injury has revealed itself, but when the tortious act

occurred. The application of this principle is further illustrated in *Cappucci v. Barone,* 266 Mass. 578 (165 N. E. 653), which was an action for damages based upon an alleged act of malpractice in the performance of a surgical operation upon the plaintiff's abdomen on May 11, 1924. Due to the fact that the plaintiff continued to experience pains in her abdomen, she consulted another physician who, on July 1, 1926, made another incision and discovered a piece of gauze sponge. September 28, 1926, the plaintiff sued the surgeon who had performed the first operation. The Massachusetts law prescribed a two-year limitation period for actions of this character. The court, referring to the defendant, held:

"Any act of misconduct or negligence on his part in the service undertaken was a breach of his contract, which gave rise to a right of action in contract or tort, and the statutory period began to run at that time, and not when the actual damage results or is ascertained, as the plaintiff contends. The damage sustained by the wrong done is not the cause of the action; and the statute is a bar to the original cause of action, although the damages may be nominal, and to all the consequential damages resulting from it though such damages may be substantial and not foreseen."

In *Ogg v. Robb,* 181 Iowa 145 (162 N. W. 217, L. R. A. 1918C, 981), the defendant, a physician, applied X-rays to the plaintiff's forearm in June, 1901. As a result, the skin of plaintiff's hand and wrist became discolored, but the defendant assured the plaintiff that this was of no consequence. In 1912, according to the plaintiff, a cancerous condition developed as a result of the X-rays applied to the arm in 1901, necessitating the amputation of the right forearm. The court held that the cause of action accrued in 1901 and that, therefore, it was barred

in 1915 when the action was filed. These two cases employed the general rule applicable to malpractice actions. See 15 Minn. Law Rev. 245. The same rule is employed in actions against attorneys, charging that they negligently performed their services. The time runs from the breach of duty. The cases are cited in Greenleaf on Evidence (16th Ed.) p. 410, footnote 4. In *Davis v. Boyett,* 120 Ga. 649 (48 S. E. 185, 66 L. R. A. 258, 102 Am. St. Rep. 118, 1 Ann. Cas. 386), the court, in holding that a father's cause of action for the seduction of his daughter arises when the act of seduction is complete, held:

"The father's right of action did not depend upon his knowledge of the great wrong which had been done by the defendant. He had a right of action before he discovered the facts out of which it arose."

It concluded that his mere ignorance of the existence of the facts did not prevent the running of the statute of limitations. The rule employed in the cases above reviewed is of universal application except where the guilty party fraudulently conceals the existing cause of action. We quote from Wood on Limitations, (4th Ed.) § 179:

"In actions for injuries resulting from the negligence or unskillfulness of another, the statute attaches and begins to run from the time when the injury was first inflicted, and not from the time when the full extent of the damages sustained has been ascertained. The gist of the action is the negligence or breach of duty, and not the consequential injury resulting therefrom."

See also Greenleaf on Evidence, (16th Ed.) § 433, and 31 Mich. Law Rev. 590, "Undiscovered Fraud and Statutes of Limitation".

The plaintiff does not charge that the defendant in any way concealed any thing concerning the purported ailment. We are not called upon to determine the precise moment when the tortious act occurred. The complaint alleges that on September 17, 1930, more than two years before Piukkula filed his complaint, he experienced difficulty in breathing, and, upon the advice of a physician, left the defendant's employ to pursue other work in the out-of-doors. If the defendant was responsible for the ailment of which Piukkula was then suffering, the ailment had already achieved substantial proportions and had inflicted upon him an appreciable injury. In other words, at that time, if the averments of the complaint are true, the defendant had breached a duty which it owed to Piukkula and the breach of the duty had resulted in an injury to him of which he was actually aware. It is evident from the foregoing that the application of the aforementioned principles requires a conclusion that the limitation period began to operate not later than September 17, 1930.

The facts that confront us, therefore, are that Piukkula did not bring his action within two years of the time that his cause of action arose. These plaintiffs, however, brought their action within two years of Piukkula's death. Since their action is dependent upon possession by Piukkula of a cause of action at the time of his death, and since he had not brought an action within two years of the time his right accrued, we would be justified in concluding that the circuit court properly sustained the demurrer to the complaint were it not for the fact that, at the time of Piukkula's death, his action was still pending, and the circuit court, in ruling adversely to the defendant upon pleadings presented by it, had declared that it (defendant) had waived the right to present the defense of limitation. The question

presents itself whether the fact that that action was pending at the time of Piukkula's death enables the plaintiffs to maintain this action. In *Altzheimer v. Central R. R. Co.*, 75 N. J. Law 424 (67 Atl. 1051), the administrator's action, instituted after the limitation period had accrued, was held maintainable, nevertheless, because the deceased before his death had timely filed a complaint and the action was still pending. The plaintiffs seem to believe that we are bound by all rulings made in Piukkula's action, and that any failure to give effect to the orders entered in that action would constitute an infraction of the rule against collateral attack. It will be recalled, however, that after Piukkula's death his action was dismissed "in compliance with the written motion of decedent's attorneys". We now quote from *Harrison v. Remington Paper Co.*, 140 Fed. 385 (72 C. C. A. 405, 5 Ann. Cas. 314, 3 L. R. A. (N. S.) 954):

"The defendant pleaded and offered to prove that during the trial of No. 20,318 the state court announced that it would instruct the jury that the denial of the motion to issue the execution against the defendant in No. 18,695 was a bar to that action, and that the plaintiff could not recover therein. Counsel insist that this ruling rendered that issue res judicata in this case, and that it was fatal to its maintenance; but the court never embodied the ruling, or rather the proposed instruction, in any final decision or judgment, but subsequently dismissed the action in which it made the announcement without prejudice to another for the same cause. Rulings and decisions in the course of an action which it finally dismissed without prejudice adjudge nothing, because the final judgment by its terms is that nothing has been adjudicated, and this fact is the only res judicata. Such judgment determines that the parties are left as free to litigate every issue in the action dismissed as they would have been if it had never been commenced. (Cites)"

In *First National Bank of Lincoln v. Duncan,* 80 Kan. 196 (101 P. 992, 18 Ann. Cas. 78, 28 L. R. A. (N. S.) 327), the court held:

"Moreover, the ruling culminated in nothing. No judgment was rendered upon it. The case having been dismissed without prejudice, the bank could at any time have begun a new action in which it could have required the court to consider again every question presented. There was no adjudication against it at any point. Under the circumstances, the dismissal having been permitted, the ruling on the demurrer was of no more effect than an expression by the court of an opinion upon an abstract question,—an intimation of the kind of judgment it would be likely to render on the matter argued, should occasion therefor arise."

In *Viviano v. Ferguson,* (Mo. App.) 39 S. W. (2d) 568, the court said:

"We see no ground for a claim of estoppel in connection with any conduct of defendants in relation to the trial of the three suits originally filed on October 23, 1926. These suits were voluntarily dismissed by plaintiffs prior to judgment without prejudice; and the dismissal without prejudice inured to the benefit, not only of plaintiffs, but also of defendants as well. In other words, the only adjudication by force of the order of dismissal was that nothing had been adjudged, and therefore the parties were left free to litigate the issues as though the suits had never been filed."

The above excerpts, we believe, correctly state the principles of law applicable to the situation before us. When those principles are applied to the issue before us, a conclusion is demanded that nothing done in Piukkula's action can avail the plaintiffs anything. In other words, since all of the orders entered in that action, with the exception of the order of dismissal, were rendered nugatory when the action was dismissed, nothing remains which supports the plaintiffs' conten-

tion that the defendant waived Piukkula's failure to file his action timely.

■ The only issue left undecided is the one predicated upon the averments of the complaint that after the demurrer in Piukkula's action had been overruled the defendant was guilty of dilatory practice by filing an amended demurrer and later a plea based upon the statute of limitations. Plaintiffs contend that these alleged time-wasting pleadings prevented Piukkula's action from being tried before his death, and that the defendant, therefore, ought now be held estopped from availing itself of any defense based upon the statute of limitations. It will be recalled, however, that Piukkula did not file his complaint until after the limitation period had expired. That being the fact, it is evident that the criticized amended demurrer and third separate answer were also not filed until after the two-year period had passed. In filing the pleadings just mentioned, the defendant was evidently prompted by a belief that the circuit court had misconstrued its demurrer, and filed these pleadings in an effort to save the situation. Its belief that error had been committed is not without substantial foundation. The plaintiffs do not contend that the defendant tardily filed these pleadings, nor that it prevented the court from ruling upon them promptly. If anything that the defendant did in Piukkula's action can be deemed the basis for an estoppel in this action brought, not on behalf of Piukkula's estate but by two individuals who were strangers to his action, then it is clear that, since the defendant did nothing until after the limitation period had expired, the defendant cannot be deemed estopped: Wood on Limitations, (4th Ed.) p. 181; 37 C. J. Limitations of Action, § 44, p. 728; *Limpert Bros., Inc. v. Stitt,* 94 N. J. Law 472 (110 Atl. 832); *Sullivan v. North Pratt*

*Coal Co.,* 205 Ala. 56 (87 So. 804); *Lotten v. O'Brien,* 146 Wis. 258 (131 N. W. 361); *Kroeger v. Farmers' Mutual Ins Co.,* 52 S. D. 433 (218 N. W. 17).

The above disposes of every issue presented by the appellants. We have not mentioned every authority cited in their brief, but they have had our attention. Without deciding the issue, we have assumed that the complaint alleged a cause of action for statutory negligence.

The judgment of the circuit court is affirmed.

CAMPBELL, C. J., and KELLY, BELT, BEAN, BAILEY and RAND, JJ., concur.

---

Petition for rehearing denied May 14, 1935

ON PETITION FOR REHEARING
(44 P. (2d) 162)

ROSSMAN, J. Plaintiffs' petition for a rehearing is predicated upon contentions that our previous decision erred in several particulars. In holding that none of these contentions reveal merit, we deem it necessary to express an opinion upon only one of them.

██ In this contention the plaintiffs argue that upon the death of John Piukkula the authority of the attorneys who had previously represented him was terminated, and that, therefore, no one could move in his behalf for the dismissal of the action brought by him. This is true. We assumed, however, when our previous decision was written that the attorneys who appeared in court merely called attention of the court to the fact of Piukkula's death so that the proper recitals could be made in the court's records indicating that the action had abated. We resorted to the word "dismissal" as an adoption of the language of the complaint. Ac-

cording to 1 R. C. L., Abatement and Revival, page 20, § 10, abatement in instances of this character "is an entire overthrow or destruction of the suit so that it is quashed and ended". The ending of the action, of course, is due to the death and not to the order. Since the action was ended without trial, the consequences followed that are stated in our previous decision. The plaintiffs are mistaken if they infer that our decision in any way enlarged the rights of the defendant because of the abatement order. We mentioned the termination of Piukkula's action in showing that the plaintiffs could not enlarge their rights because of anything which had been done in his action.

The petition for a rehearing is denied.