Argued March 8, affirmed May 10, petition for rehearing
denied June 14, 1961

# HUTCHISON *v.* SEMLER ET AL

361 P. 2d 803
362 P. 2d 704

*K. C. Tanner*, Portland, argued the cause for appellant. On the brief were Tanner & Carney, Portland.

*H. H. Phillips*, Portland, argued the cause for respondents. On the brief were Phillips, Coughlin, Buell & Phillips, Portland.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Lusk, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff, Jacob J. Hutchison, from a judgment which the circuit court entered in favor of the four defendants who constitute a partnership that operates a dental laboratory in Portland. The entry of the judgment was preceded by the return of a jury's verdict in the defendants' favor.

Details omitted, the complaint alleges that (1) the plaintiff was employed in the defendants' laboratory as a laboratory technician; (2) the defendants negligently failed "to provide any outside windows or other means of cleaning the atmosphere" in the room in which the plaintiff worked; (3) the defendants failed to ventilate the room so as "to render harmless dust and other impurities generated in the course of its manufacturing and laboring process carried on therein"; and (4) defendants failed to provide exhaust fans for the room. The complaint avers that as a result of those conditions the plaintiff inhaled "dust and metal particles" and thereby became afflicted with silicosis. Other parts of the pleading allege the damages for which judgment was sought.

The answer denied not only all charges of negligence but also the allegation that the plaintiff was afflicted with silicosis. In addition, it averred that the plaintiff's "purported cause of action is barred by the statute of limitations * * *."

The plaintiff worked in the defendants' laboratory as a dental technician from the spring of 1953 to September 1, 1958. He instituted this action December 12, 1958. While in the defendant's employ he operated for periods each day two machines to one of which the witnesses referred as a sandblaster and the other of which they termed a grinding machine. The machines were used for finishing the surfaces of dental plates and bridges. The plaintiff swore that the grinding wheel of the grinding machine contained silica and that when he used it free silica and fine metal particles were forced into the air which he breathed. Further, he claimed that the operating parts of the sandblasting machine, although enclosed, discharged occasionally quantities of fine silica into the room's air.

The plaintiff-appellant presents the following three assignments of error:

(1) "The court, during the examination of the witness Harry Semler, erred in overruling the objection to the introduction into evidence of Defendants' Exhibit 23 and in permitting their counsel to read the exhibit to the jury."

(2) "The court erred in giving the following charge to the jury:

"The defendants in this case have asserted as a defense what is known as the statute of limitations. * * *" (We will presently take note more fully of the instruction)

(3) "The court erred in receiving in evidence over plaintiff's objections Defendant's Exhibits 26 to 31 inclusive."

We will now consider the first of the above assignments of error. It will be recalled that the complaint charged as one of its specifications of negligence that the defendants failed to provide the room in which the plaintiff worked with "any outside windows." Actually the room had a window, as the plaintiff conceded, but it was not in the place where the plaintiff believed that ventilation was needed. When the plaintiff spoke to the defendants upon the subject they had contractors estimate the cost of installing a window but failed, so the plaintiff swore, to order construction at that time because the cost was more than they cared to pay. The plaintiff testified that after he quit the defendants' employment the window was installed. Since the jury visited the laboratory, its members saw the window. A photograph which is an exhibit shows the window.

Dr. Harry Semler, manager of the laboratory, testified that after the plaintiff complained about insufficient ventilation he ordered the installation of the window which the plaintiff requested and which the jury saw. He swore that he gave the order early in 1958 and before the plaintiff left the defendants' employ. The defendants do not own the building in which their laboratory occupies space and Dr. Semler testified that he ordered installation through the firm of building managers which represents the owners of the structure. The defendants produced three letters which constituted the correspondence that took place between Dr. Semler and the building managers preceding installation of the window. One of the letters was from Dr. Semler. It ordered installation. The other two were from the building managers and confirmed the order. When the letters were offered plaintiff's counsel objected, "I don't think it is competent. It is hearsay." At that point defendants' counsel de-

clared that he was not offering the letters to prove the statements recited in them but merely to show that "the letters were written." The trial judge then inquired, "I assume it's limited for the purpose of showing the window, arrangements for the installation of a window, was long before this incident of which complaint is made?" Defendants' counsel replied, "That's the sole purpose." Plaintiff made no further objection and thereupon the trial judge ruled, "Well, for that limited purpose it may be received."

■ The letters did not prove the installation of the window. The jury saw the window and the defendants freely admitted that the window had not been installed before the plaintiff left their employ. The plaintiff's testimony, however, indicated to the jury that when the defendants discovered that the installation of a window was costly they abandoned the project. In other words, the plaintiff sought to create the impression that the defendants sacrificed ventilation to pinch-penny tactics. Dr. Semler's testimony showed that the defendants did not abandon their purpose to install the window but, to the contrary, through correspondence with the building's manager ordered the window and its placement. His testimony also showed that the delay in installation was not the defendants' fault. If we deem the correspondence as real evidence we then have proof that the installation of the window was ordered timely. The letters were admissible—not for the purpose of establishing the truth of their contents but to show that at the pertinent time the installation of the window was ordered. Since the defendants conceded that the window was not in place during the period that the plaintiff says he became afflicted with silicosis the letters did not pertain to the issue of negligence. The letters, however, together with Dr. Sem-

ler's testimony indicated that the defendants were not guilty of the penurious propensity that the plaintiff sought to attribute to them. That purported base tendency should not have been injected into the case; but since it was, this evidence was the defendants' answer. Receipt of the letters for the limited purposes permitted by the trial judge did not violate the hearsay evidence rule. *Marr v. Putnam,* 213 Or 17, 321 P2d 1061.

The first assignment of error possesses no merit.

The second assignment of error, as we have stated, challenges an instruction which submitted to the jury the defendants' affirmative defense that the statute of limitation barred the plaintiff's recovery. The plaintiff does not contend that the instruction misstates the law, but claims that the record contains no evidence that the limitation period had run before he filed his action.

The instructions told the jury that the answer averred that the plaintiff's action "was barred by the statute of limitations, in that the physical condition for which plaintiff seeks to recover damages in this case was in existence and known to plaintiff, or should have been known to him, more than two years prior to the commencement of the action." It added that since the reply denied the averment just mentioned, "the plaintiff has placed the burden upon the defendants to prove the allegations in their answer * * * by a preponderance of the evidence." The instructions, after stating that the plaintiff instituted his action December 12, 1958, continued:

"* * * if you find under the evidence in this case that the plaintiff knew, or in the exercise of reasonable care should have known, of the existence of the physical condition for which he seeks

to recover damages in this case for more than two years prior to the time he commenced this action, you should return your verdict in favor of the defendants  *  *  *."

The plaintiff claims that the period of limitations did not begin to run until he left the defendants' employ.

*Shives v. Chamberlain,* 168 Or 676, 126 P2d 28, was based upon a charge of malpractice which the plaintiff made against a physician whom he had consulted over a period of several years and who had failed to discover that he was suffering from glaucoma. *Hotelling v. Walther,* 169 Or 559, 130 P2d 944, was an action for malpractice against a dentist who, in extracting plaintiff's impacted tooth, failed to remove from the tooth socket two parts of the root. The area where the two parts were left became inflamed, emitted pus and caused the plaintiff pain. Although the plaintiff returned to the dentist many times, the remaining parts of the tooth were not discovered. The charge of malpractice was based not only upon the extraction but also upon the subsequent treatment. When the patient in the Shives case went to another physician the latter used an instrument which Dr. Chamberlain had not used and discovered that the plaintiff was suffering from glaucoma. When the patient in the Hotelling case went to another dentist the latter found by the use of X-ray photography the two remaining parts of the tooth. In each case this court held that the period of limitation did not begin to run until the practitioner had performed for his patient his last service. Obviously, that must be true, for in the meantime the patient had no knowledge that the practitioner had been guilty of a negligent act. He would not have returned to the practitioner had he thought

that his methods were lacking in competence; and he could not be expected to know more than the practitioner whom he was consulting and in whom he was continuing to repose confidence. Thus, those two decisions held that the statute of limitations does not begin to run the moment when the patient becomes a victim of negligence, but later when he acquires knowledge thereof.

In *Piukkula v. Pillsbury Flouring Co.*, 150 Or 304, 42 P2d 921, 44 P2d 162, the plaintiff on August 29, 1929, entered the defendant's employ and worked at a place in the flour mill where he inhaled flour dust. September 17, 1930, the plaintiff experienced difficulty in breathing and consulted a physician. Three and one-half months later, upon the physician's suggestion, he left the defendant's employ. A re-examination of the complaint filed in that action shows that it alleged that before the plaintiff left his employment his health had become weakened and impaired. His physician advised him that in order to "recuperate" he should leave his employment and enter upon the work of a fisherman where he would be assured of pure fresh air. June 9, 1933, he instituted an action against the defendant claiming that he had incurred a disease of a pulmonary character. December 14, 1933, he died. This court, in affirming an order of the circuit court which sustained a demurrer to the complaint on the ground that the plaintiff's action was barred by our two year statute of limitations, mentioned, while taking note of the authorities, decisions which held that the statutory period runs from the time when the tort is committed whether or not the plaintiff is aware that he has suffered an injury. It did not, however, rest our decision upon those cases but pointed out that more than two years before the plaintiff filed his

action he was aware of a disability, consulted a physician, quit his employment and had the basis of an action against his employer. It likewise mentioned that his last exposure to the inhalation of flour dust occurred more than two years before he instituted his action.

*Urie v. Thompson,* 337 U.S. 163, 93 L Ed 1282, 69 S Ct 1018, 11 ALR2d 252, was based, like the case at bar, upon a claim that while the plaintiff was in the defendant's employ the air which he breathed at his place of employment was charged, through the defendant's negligence, with silica dust and that he thereby became afflicted with silicosis. In that case the plaintiff, upon entering the defendant's employ in 1910 became exposed to the inhalation of silica dust which was projected into the place where he worked by the defendant's locomotives which were equipped with defective sanding apparatus. In 1940 he became incapacitated for further work and November 25, 1941, filed the action under review. The applicable period of limitation was three years. The defendant did not claim that the plaintiff should have known prior to his incapacitation that he was suffering from an illness that resulted from his work. The United States Supreme Court held that the bar of the statute of limitations did not begin to run until the accumulative effects of the harmful dust manifested themselves. It stated that "the traditional purposes of statutes of limitation * * * require the assertion of claims within a specified period of time after notice of the invasion of legal rights." It quoted the following from a California decision:

   "* * * the injurious consequences of the exposure are the product of a period of time rather than a point of time; consequently the afflicted

employee can be held to be 'injured' only when the accumulative effects of the deleterious substance manifest themselves."

The court held that the statute of limitations began to run when the plaintiff became aware of accumulative effects of the harmful dust.

Restatement of the Law, Torts, § 899, Comment e, declares:

"Under the early interpretation of the English statutes of limitations, knowledge by the injured person of the existence of the tort was immaterial, and it is still true in many of the States that, in the absence of fraud or concealment of the cause of action, the statutory period runs from the time the tort was committed although the injured person had no knowledge or reason to know of it. Statutes have been enacted in some States providing that the period does not begin until the injured person has knowledge or reason to know of the facts, if the tortfeasor has concealed the existence of the tort. In some States which have no such special statutes, the courts have reached the same result by construction of the general statute."

■ We concur in the rule enunciated in the Urie case and believe that our prior decisions are in accord with it. Thus, the statute of limitations began to run in the case at bar when the plaintiff became apprised, or as a reasonable man should have known, that his health was being undermined by the dust which he was breathing.

We see from the foregoing that the instruction to which the plaintiff takes exception did not erroneously state the principle of law applicable to a case in which a defendant, with support in the evidence, challenges the timeliness of the plaintiff's suit. But the plaintiff, as we have noted, claims that the record contains no

support for the averment of the answer which charges that the period of limitation had expired before this action was filed.

We have read with care the transcript of testimony consisting of 330 pages. The part which indicates when the plaintiff first felt disturbing symptoms and his experiences from that time on was given by the plaintiff himself. In it he mentioned developments in the operation of the defendants' laboratory which he said caused the dust condition of the room in which he worked to become acute. He related the efforts which he then made to persuade the defendants to provide better ventilation. That occurred "in the first part of '56," so he swore. He also described the illness which came upon him and the manner in which his health deteriorated. He dwelled upon the fact that his lungs became affected and declared that "my breathing was very bad." Shortly he found himself engaged in coughing. According to him, he felt "run down, weak condition. * * * I thought that maybe that I was tired and run down and worn out." He added that, "If I walked two or three blocks at a normal rate I would be winded." He attributed his ill health to the dust which he said was in the air of the room where he worked. He swore that the air in the room at times became so laden with dust that he could not see the walls and was compelled to withdraw to a nearby hallway until the dust had settled. When the plaintiff was asked to specify the time when he noticed his symptoms of ill health he replied with expressions that lend themselves to more than one signification of time. According to him, he noticed his ill health "I'd say three, three and a half years" from the time that he entered the defendants' employ which he stated occurred in "the spring of 1953." In addition

to giving that answer, he employed other phrases also inexact.

█ In determining whether or not the challenged instruction was applicable to an issue developed by the evidence we must construe the latter in the light most favorable to the respondents, that is, to the defendants. That demand upon us is so well established that we need not accompany its statement with a citation to authorities. Accordingly, the jury had a right to believe that the plaintiff three years or three and a half years after the spring of 1953 noticed that his health was undermined and that his illness was of a pulmonary character. That being true, the instruction was warranted, and this assignment of error is lacking in merit.

█ The plaintiff's third, being the last, assignment of error, challenges a ruling, as we have seen, which received in evidence upon the tender of the defendants six X-ray photographs. They were received for illustrative purposes only. When they were presented plaintiff's counsel said: "Well, could we take that up at a subsequent time, your Honor, with respect to the propriety of those?" The trial judge acquiesced and deferred a ruling upon the tendered exhibits. As the witness explained the photographs, the plaintiff's counsel interrupted by declaring:

"Your Honor, they haven't been offered. They haven't been received as exhibits. I just didn't know what he was talking about. I thought he was just trying to illustrate something.

"THE COURT: That's what I understand. They hadn't been as yet received, however.

"PLAINTIFF'S COUNSEL: No. I don't know what bearing they have in this case. I think I might be heard on that, but that's all right if he wants to illustrate them."

The trial judge stated that he assumed that defendants' counsel was using the X-ray photographs "merely by way of illustration." Whereupon, plaintiff's counsel acquiesced by declaring, "All right." Presently defendants' counsel again offered the six X-ray photographs as evidence and stated that he was doing so "for the purposes of illustration." He then met with the following request made by plaintiff's counsel:

> "Well, could we take that up at a subsequent time, your Honor, with respect to the propriety of those?"

The request was granted. After both parties had rested the court declared:

> "Let's dispose of the only pending matter at the present time, and that is the objection to the introduction of the X-rays tendered for the purpose of illustration. You indicated that you desired to be heard about it, * * *?"

Plaintiff's counsel replied:

> "Well, I had some doubts about the propriety of obtaining X-rays in isolated cases apart from this litigation in order to explain testimony. I had some misgivings about it, but whatever your Honor thinks is all right with me."

Thereupon the tendered exhibits were received as evidence. Since no objection was made to the tendered exhibits and no exception was saved to their receipt in evidence, this assignment of error is without merit.

The above disposes, adversely to the plaintiff, of the three assignments of error. The judgment of the circuit court is affirmed.

ON REHEARING

K. C. Tanner, Portland, for petition.

Phillips, Coughlin, Buell & Phillips, Portland, contra.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Lusk, Justices.

ROSSMAN, J.

The plaintiff-appellant, Jacob J. Hutchison, filed a petition for rehearing which claims that we erred in the following particulars:

"1. The opinion of the court failed to consider the decision of the United States Court of Appeals for the Ninth Circuit in the case of *Reynolds Metal Co. v. Yturbide,* (CA-9, 1958), 258 F2d 321 * * *.

"2. The statement of facts in the opinion erroneously stated that 'the grinding wheel of the grinding machine contained silica.' * * *

"3. The opinion of the court erroneously states that 'the plaintiff sought to create the impression that the defendants sacrificed ventilation to pinchpenny tactics' when in truth and in fact, as the record plainly discloses, the installation which was made by the defendants after complaint had been made with respect to the ventilation was a hole in the wall in which was inserted a fan * * *."

We did not overlook *Reynolds Metal Co. v. Yturbide,* supra, when we wrote our challenged opinion. We read that decision with care. Since it was not concerned with silicosis, and *Urie v. Thompson,* 337 US 163, 93 L Ed 1282, 69 S Ct 1018, 11 ALR2d 252, was concerned with that illness and the statute of limitations which likewise constitute the two crucial issues of this case, we thought that resort to the Urie case was preferable. The Reynolds case arose out of a claim that the operation of the defendant's aluminum

reduction plant near the home of the plaintiff was negligent and that it caused the plaintiff to become poisoned by fluorides which originated in the plant. The decision states:

> "* * * It was not disputed, in fact it was stipulated, that 'fluorides in some quantities and forms, did escape, when the potlines of said plant were operating, from defendant's plant.' * * *"

The Reynolds case resolved the principal issue in the case, negligence, through the use of the doctrine of res ipsa loquitur. It was concerned in part, as is this case, with the question as to when a party who claims that he was injured by a continuing tort must file his action so as to avoid the bar of the statute of limitations. We do not believe that it ruled upon that issue differently from our decision. The latter ruled in accord with the Urie and Reynolds opinions that "the statute of limitations began to run in the case at bar when the plaintiff became apprised, or as a reasonable man should have known, that his health was being undermined by the dust which he was breathing." There is no contention that the rule just stated is unsound.

In view of the fact that two chemists from two laboratories who examined the grinding wheel reported that it contained silica, we are somewhat perplexed by the contention above quoted from the petition for a rehearing which urges that our decision erroneously stated that the grinding wheel contained silica. Dr. Nealley Wood, a chemist, at the request of the defendants, examined the wheel and also an abrasive wheel which formed a further part of the defendants' laboratory. He testified that each contained silica. Referring to the grinding wheel, his report stated:

> " 'f. Chemical analysis to determine free silicon dioxide (quartz) on small grinding wheel. ··· · ·

" 'Results of the tests were as follows: Sample number one, test (a)'—that's the sieve analysis on the material from under the grinding wheel. Now, these percentages that I give are the percentages by weight retained on the screen when you screen it. The amount that's left on there is weighed and this is the percentage. On a 100 mesh screen, 47.6 per cent; on the 200 mesh screen, 22.7 per cent; on the 325 mesh screen, 13.4 per cent; and the amount passing the 325 mesh screen was 16.3 per cent."

Dr. Wood's report as to the abrasive wheel was substantially the same as the report from which we just quoted. Another chemist who examined this material gave similar testimony. The testimony of the two witnesses is unchallenged.

In writing our original opinion we mentioned the grinding wheel because the plaintiff, in testifying, referred not only to the sandblasting machine and to the silica investments, but also to all other equipment in the laboratory including these wheels which he seemingly held under suspicion. We do not believe that our statement is erroneous.

The third contention of the plaintiff above quoted concerns the ventilation of the room. It is true that after the plaintiff felt that the room was not properly ventilated and spoke to the defendants, there was installed in the wall of the room that faced to the out doors a "ten inch hole through the wall with a fan blowing air in." The words quoted were taken from the plaintiff's testimony. That ventilation device was installed while the plaintiff still worked in the laboratory. It was in addition to several ducts that formed a part of each dust creating machine and which were intended to prevent dust from escaping from the machine into the room. When it developed that the

hole in the wall and its fan did not suffice, the window which our original opinion mentioned replaced the hole and the fan. Our original opinion did not mention the hole and its fan because the assignment of error was not concerned with that item of ventilation. It was concerned with nothing except the ruling of the trial judge which received in evidence some letters that explained the delay in installing the window. The plaintiff does not challenge our ruling that the letters were properly received in evidence. The hole in the wall and the fan were not relevant to a consideration of the assignment of error just mentioned nor to any of the others.

The above disposes of all contentions submitted by the petition for a rehearing. We have found no error. The petition is denied.