Argued October 9, reversed and remanded December 5, 1978, petition
for rehearing denied January 9, 1979

SCHIELE, *Appellant,*

*v.*

HOBART CORPORATION et al, *Respondents.*

(No. A7603-03253, SC 25473)

587 P2d 1010

Alan M. Scott, Portland, argued the cause for appellant. With him on the brief was Galton, Popick & Scott, Portland.

John R. Baker, Portland, argued the cause for respondent Dayton Electric Manufacturing Co. With him on the brief were William R. Miller, Jr., and Jones, Lang, Klein, Wolf & Smith, Portland.

James H. Clarke, Portland, argued the cause for respondents Borden Chemical and Blake, Moffitt & Towne, Inc. Ridgway K. Foley, Jr., Portland, argued the cause for respondent Franklin Electric Subsidiaries, Inc. With them on the brief were Tooze, Kerr, Peterson, Marshall & Shenker, Edwin J. Peterson, and Paul J. Lorenzini, Portland, for respondents Hobart Corporation and George Bach Co.; Souther, Spaulding, Kinsey, Williamson & Schwabe, and Wayne A. Williamson, Portland; and Dezendorf,

Spears, Lubersky & Campbell, and David B. Markowitz, Portland.

Before Denecke, Chief Justice, and Holman, Howell, Bryson, Lent, and Linde, Justices.

HOLMAN, J.

## HOLMAN, J.

Plaintiff, a meat wrapper, brought an action seeking damages for permanent injuries which is based upon a products liability cause of action. Defendants are the manufacturers and distributors of various meat wrapping machines, the manufacturer of a ventilating unit incorporated in one of the machines, and the manufacturer and distributor of a polyvinyl chloride meat wrapping film used with the machines. Following an exchange of pleadings and the taking of plaintiff's deposition, defendants moved for summary judgment; they asserted that facts disclosed in plaintiff's deposition showed that the applicable statute of limitations barred her claim. The trial court granted the motion and plaintiff appeals.

Plaintiff's deposition discloses the following facts: plaintiff began work as a meat wrapper at Fred Meyer in Portland, Oregon, in November of 1948. She worked in that capacity from 1948 through March of 1974. In May or June of 1972 Fred Meyer purchased and installed defendant Hobart's meat wrapping machine which allegedly incorporated defendant Dayton Electric's ventilator. The machine used a hot wire to cut the polyvinyl chloride meat wrapping film allegedly manufactured by defendant Borden Chemical. In December of 1972 plaintiff began using the new meat wrapping machine during a considerable part of her work day. Prior to this time, plaintiff had been in good health. Soon after beginning use of the machine, she began to experience a variety of health problems, more specifically, nausea, dizziness, choking, coughing, and difficulty catching her breath. Almost from the outset, plaintiff associated these problems with the fumes which the machine generated as its hot wire cut the polyvinyl chloride meat wrapping film.

Between January of 1973 and October of 1973, plaintiff's condition worsened. Her choking and coughing increased. She began to cough at night and experienced pain in her lungs. In the summer of that

year she began to cough up quantities of white sputum at night. While at work she experienced coughing spells six to eight times a day which forced her to walk out to a breezeway to get air. She complained about the problem to her employer's manager but nothing was done.

Between October of 1973 and January of 1974, plaintiff's condition continued to deteriorate. She experienced fatigue, shortness of breath, and a burning sensation in her eyes, in addition to the symptoms previously described. To facilitate breathing at night, plaintiff elevated her head with two or three pillows.

In January of 1974, plaintiff noticed that her lungs were more sore than usual. During the latter part of January and the first part of February 1974, the pain became almost constant. Plaintiff put in her last day at work on March 12, 1974. Almost immediately thereafter she was hospitalized for pulmonary pneumonia. After testing and x-rays during March 1974, plaintiff's doctors informed her on or about April 15, 1974, that her illness was possibly due to her exposure to polyvinyl chloride fumes on the job.

Plaintiff filed her complaint in this action on March 8, 1976.

The party moving for summary judgment bears the burden of establishing that no genuine issue of material fact exists and that he or she is entitled to judgment as a matter of law. ORS 18.105; *Uihlein v. Albertson's, Inc.,* 282 Or 631, 580 P2d 1014 (1978); *Taylor v. Baker,* 279 Or 139, 566 P2d 884 (1977); *Santilli v. State Farm,* 278 Or 53, 59, 562 P2d 965 (1977); *Forest Grove Brickworks v. Stickland,* 277 Or 81, 84-85, 87, 559 P2d 502 (1977). Defendants rely on the statute of limitations. ORS 12.010 provides that

"[a]ctions at law shall only be commenced within the periods prescribed in this chapter, after the cause of action shall have accrued * * *."

ORS 12.110(1) provides that

> "[a]n action * * * for any injury to the person * * * shall be commenced within two years."

This case necessitates our determining when the two-year statute of limitations contained in ORS 12.110 (1) begins to run (the cause of action accrues) on a claim alleging that defendants' negligence caused an occupational disease. Once we have resolved that issue we must determine whether the record relied on by defendants in their motion for summary judgment satisfied the requirement of ORS 18.105 that no genuine issue of material fact exist as to the passage of the two-year period.

Plaintiff contends that the statute of limitations did not begin to run until plaintiff was informed by a physician of the nature of her disease or injury and its possible cause. Since this did not occur until April of 1974 she argues that her March 8, 1976, filing fell within the limitation period. Defendants argue that the limitation period began to run when plaintiff first became aware of her symptoms and their cause. Since she first associated her symptoms with the fumes prior to March 8, 1974, defendants believe the two-year limitation period had expired by the time plaintiff initiated her action.

Both parties agree that this court's decision in *Hutchison v. Semler,* 227 Or 437, 361 P2d 803, 362 P2d 704 (1961), must serve as the starting point for any analysis of when the period of limitation begins to run in an occupational disease case. In *Hutchison,* the plaintiff worked as a laboratory technician in the defendant's dental laboratory where he encountered silica dust produced by grinding machines and sandblasters. He eventually developed silicosis. Plaintiff's complaint alleged that defendant had negligently failed to provide proper ventilation. Defendant answered with a general denial and the affirmative defense that the statute of limitations barred plaintiff's cause of action. At trial, plaintiff testified that he

[ 487 ]

first experienced the symptoms of silicosis in the early part of 1956 and that he associated his symptoms of the disease with the lack of proper ventilation in the workshop at that time. Plaintiff instituted his action in December of 1958. The trial court gave the following instruction to the jury:

> "* * * if you find under the evidence in this case that the plaintiff knew, or in the exercise of reasonable care should have known, *of the existence of the physical condition for which he seeks to recover damages* in this case for more than two years prior to the time he commenced this action, you should return your verdict in favor of the defendants * * *." (Emphasis ours.)

The jury returned a verdict for defendant and plaintiff appealed.

On appeal, plaintiff contended that the period of limitations did not begin to run until he left defendant's employ. This court rejected that argument and upheld the trial court's instruction to the jury. The court stated that

> "* * * the statute of limitations began to run in the case at bar when the plaintiff became apprised, or as a reasonable man should have known, that *his health was being undermined* by the dust which he was breathing." (Emphasis added.) 227 Or at 446.

In reaching this conclusion, the court relied heavily on a United States Supreme Court decision, *Urie v. Thompson,* 337 US 163, 69 S Ct 1018, 93 L Ed 1282 (1949), a case which also involved work-place induced silicosis.

In *Urie,* the plaintiff entered the defendant's employ in 1910. In subsequent years he regularly breathed silica dust blown into the place where he worked by the defendant's locomotives which were equipped with defective sanding apparatus. In 1940, lung problems incapacitated him for further work and he filed the action under review on November 25,

[ 488 ]

1941. The applicable period of limitations was three years. The court stated that

"* * * the traditional purposes of statutes of limitations * * * require the assertion of claims within a specified period of time after notice of the invasion of legal rights." 337 US at 170.

The Court referred to Urie's blameless ignorance.

"The record before us is clear that Urie became too ill to work in May of 1940 and that diagnosis of his condition was accomplished in the following weeks. There is no suggestion that Urie should have known he had silicosis at any earlier date." *Id.*

The Court then quoted the following language from *Associated Indem. Corp. v. Industrial Accident Commission,* 124 Cal App 378, 381, 12 P2d 1075 (1932):

"It follows that no specific date of contact with the substance can be charged with being the date of injury, inasmuch as the injurious consequences of the exposure are the product of a period of time rather than a point of time; consequently the afflicted employee can be held to be 'injured' only when the accumulated effects of the deleterious substance manifest themselves." *Id.*

The Supreme Court held that the statute of limitations did not begin to run until plaintiff became aware of the cumulative effects of the harmful dust.

■ These cases stand for the proposition that the statute of limitations on claims involving negligent infliction of an occupational disease does not begin to run until the plaintiff knows, or as a reasonably prudent person should know, that he has the condition for which his action is brought and that defendant has caused it. Plaintiff's actionable condition in this case is alleged to be her *permanent injuries.* However, it still remains to be determined exactly what type of knowledge plaintiff must have before it should be said that she knew or should have known of her condition. Plaintiff argues that the statute of limitations did not begin to run until her physician diagnosed her disease and identified its source. We agree that the acquisition

of such information from a physician would undoubtedly start the period running. However, we reject plaintiff's contention that nothing short of a positive diagnosis by a physician will have this effect. A plaintiff whose condition has not yet been diagnosed by a physician can have or, in the exercise of reasonable care, could have access to information which requires or would require a reasonable person to conclude she is being seriously or permanently injured.

■ On the other hand, we reject defendants' claim that knowledge of symptoms and their causal relationship to defendants' actions in and of itself initiates the running of the statute. We do not believe the legislature intended that the statute be applied in a manner which would require one to file an action for temporary sickness or discomfort or risk the loss of a right of action for permanent injury.

■ The statute of limitations begins to run when a reasonably prudent person associates his symptoms with a serious or permanent condition and at the same time perceives the role which the defendant has played in inducing that condition. Of course, one's condition may deteriorate to the point where a delay in seeking medical attention is no longer reasonable and to further such delay would be to charge the individual with any knowledge which a medical examination would otherwise have disclosed.

■ If knowledge of the occupational disease, its symptoms, and its causes is widespread among persons similarly situated to plaintiff, then we hold that plaintiff, as a reasonable person, should have recognized her condition for what it was and brought the action within the applicable period of limitation following the onset of the symptoms. However, defendants have made no showing that there was any prevalent knowledge concerning the dangers of the

fumes from polyvinyl chloride. This is an extremely close case, but we believe we cannot say as a matter of law that a reasonably prudent person would have apprehended more than two years prior to the commencement of plaintiff's action she was being seriously or permanently injured. Many persons would probably have realized the seriousness of their condition and have gone to a doctor, but not everyone goes to a doctor with the same degree of alacrity. We cannot, therefore, say as a matter of law that anyone who is optimistic about his condition's taking a turn for the better is unreasonable.

A number of other courts have reached similar conclusions in this type of situation. In *Mitchell v. American Tobacco Co.,* 183 F Supp 406 (MD Penn 1960), the administratrix of the estate of an individual who had died of lung cancer brought an action against the manufacturer of one of the brands of cigarettes which the decedent had formerly smoked. The decedent had last used this product in 1951; he died of lung cancer in 1958. A two-year statute of limitations applied. On the statute of limitations issue, the court cited *Urie* and held that the administratrix was entitled by law to have an opportunity to present evidence that the lung cancer did not become apparent until it was discovered at a time within the two-year statute of limitations.

In *Ricciuti v. Voltarc Tubes, Inc.,* 277 F2d 809 (2d Cir. 1960), a sign maker brought an action against the manufacturer of neon tubes for disability caused by berylliosis which was allegedly contracted while using the defendant's tubes which contained beryllium. The trial court granted summary judgment to the defendant on the ground that the action was barred by any one of a number of state statutes of limitation. The sign maker appealed. The Court of Appeals noted that plaintiff's complaint alleged he had been disabled since 1953. He ceased work in 1955 and his illness was diagnosed in 1956. He brought his action in 1957. A

three-year statute of limitations applied. The court said that

"* * * in this case the statute of limitations began to run on * * * the date on which the plaintiff's disease was diagnosed, unless the defendant can show that the plaintiff should, in the exercise of reasonable diligence, have earlier discovered the nature of his disease." 227 F2d at 813.

In *Sterling Drug, Inc. v. Cornish,* 370 F2d 82 (8th Cir. 1966), the plaintiff brought an action for damage to her eyesight resulting from the use of a drug manufactured by the defendant for the treatment of arthritis. The defendant contended that the plaintiff's action had not been brought within the applicable two-year statute of limitations because more than two years prior to bringing the action she had suffered symptoms which disturbed her eyesight. The court held that this was insufficient to show permanent eye injury for which plaintiff was seeking recovery.

The trial court's grant of summary judgment is reversed and the case is remanded for trial.