Saul **PULIDO** and Richard **Nichols, Plaintiffs,**

v.

**UNITED PARCEL SERVICE GENERAL SERVICES CO., a Delaware corporation; Inforite Corp., a New York corporation; Toppan Moore Co., a Japanese corporation; and II Morrow, Inc., an Oregon corporation, Defendants.**

**Civil No. 97–6080–FR.**

United States District Court, D. Oregon.

Dec. 8, 1998.

See also 1998 WL 125507.

Arthur C. Johnson, Johnson, Clifton, Larson & Corson, Eugene, OR, William Rutzick, Corrie J. Yackulic, Schroeter, Goldmark & Bender, Seattle, WA, David N. Mark, Seattle, WA, for Plaintiffs.

Christopher W. Angius, Joy Ellis, Perkins Coie, Portland, OR, G.H. Gromel, Jr., Cassandra C. Collins, Hunton & Williams, Richmond, VA, Anne E. Kershaw, Hunton & Williams, New York, NY, for Defendants United Parcel Service General Services Co. and II Morrow, Inc.

Richard A. Lee, Molly Jo Mullen, Bodyfelt, Mount, Stroup & Chamberlain, Portland, OR, for Defendant Inforite Corp.

James D. Hibbard, John T. Kaempf, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, OR, for Defendant Toppan Moore Co.

## OPINION

FRYE, District Judge.

The matters before the court are (1) the motion for summary judgment against plaintiff Richard Nichols by defendant Inforite pursuant to FRCP 56(# 43); (2) the motion for summary judgment against plaintiff Richard Nichols by defendants United Parcel Service General Services Co. and II Morrow, Inc. pursuant to Fed.R.Civ.P. 56(b)(# 44); (3) the motion for summary judgment against plaintiff Saul Pulido by defendants United Parcel Service General·Services Co. and II Morrow, Inc. pursuant to Fed.R.Civ.P. 56(b) (# 48); and (4) the motion for summary judgment against plaintiff Richard Nichols by defendant Toppan Moore Co., Ltd. pursuant to FRCP 56(# 54).

## BACKGROUND

On April 4, 1997, plaintiff Saul Pulido, a package car driver employed by United Parcel Service, filed this action. He alleges that he suffered repetitive stress injuries from using hand-held computers known as delivery information acquisition devices (DIADs) in the performance of his job.

On June 9, 1997, an amended complaint was filed, adding the claims of plaintiff Richard Nichols for damages for repetitive stress injuries caused by the use of DIADs in the performance of his job.

The undisputed facts have been previously stated. *See* Opinion of March 17, 1998, 1998 WL 125507 (D.Or.).

## CONTENTIONS OF THE PARTIES

All defendants argue that the claim of plaintiff Richard Nichols is barred by the statute of limitations of the State of Ohio. Nichols contends that the statute of limitations of the State of Ohio did not begin to run

until September of 1995, rather than May of 1995 as the defendants contend.

Defendants United Parcel Service General Services Co. (UPSGSC) and II Morrow, Inc. (II Morrow) contend that they did not market or place into the stream of commerce the DIAD or the DIAD Vehicle Adaptor ("DVA") and, consequently, they cannot be held strictly liable. UPSGSC contends that the claims of the plaintiffs against it are barred by the various workers' compensation laws of the home states of the plaintiffs. II Morrow also contends that it owed no duty to the plaintiffs which would give rise to a negligence claim.

The plaintiffs contend that their claims against UPSGSC are not barred by the workers' compensation laws of their home states because UPSGSC is neither a joint employer with UPS, Inc. nor the employer of the plaintiffs. The plaintiffs further contend that UPSGSC and II Morrow are sellers of the DIAD and the DVA to other UPS corporate entities and therefore placed the products into the stream of commerce. The plaintiffs further contend that UPSGSC and II Morrow are liable because they knew that Inforite would market the DIAD as its own product, the AS 1050. The plaintiffs also argue that the involvement of II Morrow as the designer and manufacturer of the DIAD IA–1 is enough to give rise to a negligence cause of action against II Morrow.

UPSGSC and II Morrow contend that plaintiff Saul Pulido failed to file his negligence claim within the two-year Oregon statute of limitation. These defendants also contend that the Illinois savings statute does not apply here because the Illinois Supreme Court has determined that the Illinois tort reform act, of which the savings statute is a part, is unconstitutional.

Pulido contends that Illinois law applies, and that the Illinois savings statute allows his claim to proceed.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987).

## ANALYSIS AND RULING

1. *Choice of Law*

As this court has previously stated, it will apply the law of the plaintiffs' home states to the product liability claims. *See* Opinion dated March 17, 1998, 1998 WL 125507 (D.Or.). The parties agree.

The parties also agree that the workers' compensation laws of the plaintiffs' home states apply to this action. The court will apply those laws. The parties do not agree on the laws that apply to Pulido's negligence claim.

When the laws of more than one jurisdiction arguably apply to an issue, a federal court exercising diversity jurisdiction must apply the choice of law rules of the state in which it is located. This court will apply the choice of law rules of the State of Oregon. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

Under Oregon law, the court must determine whether there is an actual conflict of law on the disputed issue; if not, Oregon law applies. *Cropp v. Interstate Distrib. Co.,* 129 Or.App. 510, 515–16, 880 P.2d 464 (dissenting opinion), *rev. denied,* 320 Or. 407, 887 P.2d 791 (1994). The court must next determine whether both states have substantial interests in having their laws applied. If not, there is no choice of law issue, and the court applies the law of the one state with substantial interests. *Dabbs v. Silver Eagle Mfg. Co.,* 98 Or.App. 581, 583–84, 779 P.2d 1104, *rev. denied,* 308 Or. 608, 784 P.2d 1101

(1989). If both states have substantial interests, the Oregon Supreme Court has adopted the "most significant relationship" approach of the Restatement (Second) Conflict of Laws. *Erwin v. Thomas,* 264 Or. 454, 456, 506 P.2d 494 (1973).

### 2. *Ohio Statute of Limitations for Product Liability*

The defendants contend that plaintiff Nichols' claim is barred by the two-year statute of limitations of the State of Ohio, the home state of plaintiff Nichols, because he suspected in May of 1995 that the DIAD caused his injuries. Nichols contends that he did not associate his symptoms with a serious or permanent condition, and he did not know that his injury was proximately caused by the defendants' product until September of 1995, which does not time-bar his claim.

 In the State of Ohio, an action based on a product liability claim "shall be brought within two years after the cause of action accrues." Ohio Rev.Code § 2305.10(A). "[A] cause of action accrues ... when the injury or loss to person or property occurs." *Id.* The Ohio statute of limitations is to be construed liberally and works as a two-pronged rule: "First, a plaintiff must know or reasonably should have known that he has been injured; and second, a plaintiff must know or reasonably should have known that his injury was proximately caused by conduct of the defendant." *Viock v. Stowe–Woodward Co.,* 13 Ohio App.3d 7, 467 N.E.2d 1378, 1384 (Ohio App. 6 Dist. 1983). "The statute of limitations begins to run when a reasonably prudent person associates his symptoms with a serious or permanent condition and at the same time perceives the role which the defendant has played in inducing that condition." *Id.* at 1386, n. 10 (quoting *Schiele v. Hobart Corp.,* 284 Or. 483, 490, 587 P.2d 1010–14 (Or.1978)).

In May of 1995, Nichols suspected that his symptoms were caused by the DIAD that he was using. Answer to Interrogatories, p. 6 (attached as Exhibit 2 to UPSGSC and II Morrow, Inc's Concise Statement of Facts in Support of Motion for Summary Judgment Against Plaintiff Richard Nichols). When questioned during depositions about the DIAD that he now claims caused his injuries, Nichols was asked, "What was it about May of 1995 that led you to have that suspicion?" Deposition of Richard Nichols, p. 102 (attached as Exhibit A to Supplemental Declaration of Stephen M. Feldman in Support of UPSGSC and II Morrow's Motion for Summary Judgment Against Plaintiff Richard Nichols). His response was, "I know I was experiencing a lot of pain, but I don't remember the specifics." *Id.*

In September of 1995, Nichols obtained a right hand and wrist injury diagnosis from a physician. *See* Declaration of Plaintiff Rick Nichols in Opposition to Motions for Summary Judgment, p. 5. Nichols had not obtained treatment for his hand or wrist prior to September of 1995. At that time, he stated as the reason he had not received treatment: "This is because the symptoms were just not regular enough or severe enough for me to consider them to be an 'injury' that justified treatment or any medical attention until then." *Id.* In December of 1995, Nichols had problems with his left hand. *Id.*

This case differs from the companion case, *McCloskey v. United Parcel Serv. Gen. Servs. Co.,* Civil No. 95–420–FR, where summary judgment was granted against McCloskey based on the statute of limitations of the State of Oregon. In that case, McCloskey filed a report with the industrial commission of the State of Arizona stating that the DIAD he used had caused wrist strain and tendinitis, and that it was then that the cause of action accrued. McCloskey's statement was not ambivalent; it was a clearly written declaration. This case does not involve parties who agree when the injury took place or that the injury was immediately apparent. *See Crego v. Baldwin–Lima–Hamilton Corp.,* 1998 WL 80240 (Ohio App. 2 Dist.1998) (Feb. 27, 1998).

Nichols' suspicion in May of 1995 that the DIAD may be causing his physical symptoms could lead a trier of fact to find that he reasonably should have known that he had been injured and that his injury was the result of the defendants' conduct. However, from the record presented to the court, it is

also reasonable that a trier of fact would conclude that Nichols did not associate his "serious or permanent condition" with the defendants' conduct until his wrist and hand diagnosis in September of 1995.

■ The defendants argue that the statements in the affidavit of Nichols are contrary to the answers that Nichols gave to their interrogatories. "It is well established that a party cannot create a genuine issue of fact by submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony." *Mays v. Hunter*, 717 F.Supp. 1247, 1250 (S.D.Ohio 1989) (quoting *Diliberti v. United States*, 817 F.2d 1259, 1263 (7th Cir. 1987)). In his affidavit, Nichols does not contradict the answers he gave to interrogatories; he fully explains those answers. For example, Nichols "suspected" that the DIAD was causing him harm in May of 1995, but he did not "know" that he was harmed until September of 1995.

■ Because all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party, a genuine issue of material fact upon which reasonable minds may differ prevents the grant of summary judgment here. The defendants' motion for summary judgment on this issue is denied.

### 3. The Oregon Statute of Limitations Versus the Illinois Statute of Limitations for Negligence

The parties have agreed that there is no conflict in the negligence laws to be applied in a companion case, thus the negligence laws of the State of Oregon were applied. *See Sy v. United Parcel Serv. Gen. Servs. Co.*, Civil No. 94–1464–FR (Opinion of March 17, 1998), 1998 WL 126870, \*7 (D.Or.). The *Sy* plaintiffs were from the States of Illinois and Wisconsin. In this case, UPSGSC and II Morrow contend that Oregon law should apply to plaintiff Pulido's negligence claim because there is no actual conflict between the negligence laws of the States of Oregon and Illinois, while Pulido contends that Illinois law is the appropriate choice of law because there is a conflict between the Oregon and Illinois savings statutes.

Pulido filed his claims in May of 1995. He voluntarily dismissed those claims in April of 1996. Pulido refiled his claims on April 4, 1997. The parties do not dispute that Pulido was injured in January of 1995.

■ Under Oregon law, Pulido's negligence claim must have been filed within two years of the accrual of his cause of action. O.R.S. 30.905(2). Oregon Revised Statute 12.220, the Oregon savings statute, "does not apply if the dismissal of the first action results from a voluntary dismissal before trial." *Alderson v. State of Oregon*, 105 Or.App. 574, 581, 806 P.2d 142 (1991). Pulido concedes that if Oregon law applies, his negligence claim is barred because he voluntarily dismissed his first claim.

The Illinois savings statute formerly stated that if "the action is voluntarily dismissed ... the plaintiff ... may commence a new action within one year." 735 Ill. Comp. Stat. 5/13–217. Amendments to the Illinois savings statute were made in 1995, eliminating the savings statute as applied to a voluntary dismissal and applied the savings statutes only to causes of action accruing on or after March 9, 1995. *Malone v. Bankhead Enters.*, 125 F.3d 535, 536, n. 1 (7th Cir.1997). Since there is no dispute that Pulido's cause of action accrued in January of 1995, the amendments are not applicable to this case. Furthermore, core portions of the tort reform act, which included the savings statute, were found to be unconstitutional, and the Illinois Supreme Court determined that they would not sever the act, voiding it in its entirety. *See Best v. Taylor Mach. Works*, 179 Ill.2d 367, 228 Ill.Dec. 636, 689 N.E.2d 1057 (Ill.1997).

The pre–1995 savings statute of the State of Illinois is not expressly limited to actions originally filed and voluntarily dismissed in the State of Illinois. *See Malone*, 125 F.3d at 539. Therefore, the court finds that there is an actual conflict of law between the Oregon and the Illinois savings statutes; the State of Oregon's savings statute does not apply to voluntary dismissals, and the State of Illinois' savings statute does apply to voluntary dismissals where the cause of action accrued on or after March 9, 1995.

With that determination, the court must now decide whether both states have a substantial interest in this lawsuit in having their laws applied. If not, there is no choice of law issues, and the court will apply the law of the one state with substantial interests. *Dabbs v. Silver Eagle Mfg. Co.*, 98 Or.App. 581, 583–84, 779 P.2d 1104, *rev. denied*, 308 Or. 608, 784 P.2d 1101 (1989). If both states have substantial interests, the Oregon Supreme Court has adopted the "most significant relationship" approach of the Restatement (Second) Conflicts of Law. *Erwin v. Thomas*, 264 Or. 454, 456, 506 P.2d 494 (1973).

■■■ The court concludes that the State of Oregon has neither a substantial interest in having its negligence laws applied in this case, nor does it have the most significant relationship to the occurrence and the parties. There are no Oregon drivers before this court; none of the plaintiffs are residents of the State of Oregon; there is no allegation that the plaintiffs were injured while working in the State of Oregon; some of the defendants do not conduct business in the State of Oregon; and the DIADs were not designed or manufactured in the State of Oregon.

■■■ *Malone* also states, however, that "a federal district court sitting in diversity must apply the statute of limitations laws of the state in which it sits." 125 F.3d at 538, citing *Reinke v. Boden*, 45 F.3d 166, 170 (7th Cir.), *cert. denied*, 516 U.S. 817, 116 S.Ct. 74, 133 L.Ed.2d 34 (1995). *Malone* further states that "a court applying Illinois law can borrow another state's statute of limitations only when the state's limitations period is shorter than that in Illinois." *Id.*, citing *Pucci v. Litwin*, 828 F.Supp. 1285, 1299 (N.D.Ill.1993); *In re VMS Ltd. Partnership Sec. Litig.*, 803 F.Supp. 179, 197 (N.D.Ill. 1992). The statute of limitations of the State of Oregon is shorter than the statute of limitations of the State of Illinois due to the various savings clauses, which indicates that this court could apply the Oregon statute of limitations. Finally, "Illinois considers statutes of limitation 'procedural' for choice-of-law purposes." *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 966 (9th Cir.1993),

citing *Cox v. Kaufman*, 212 Ill.App.3d 1056, 156 Ill.Dec. 1031, 1035, 571 N.E.2d 1011, 1015, *appeal denied*, 141 Ill.2d 537, 162 Ill. Dec. 484, 580 N.E.2d 110 (1991). This case is governed by the statutes of limitation of the forum state—the State of Oregon. Therefore, the Illinois savings statute does not apply to Pulido's voluntary dismissal, and his negligence claim is barred. Summary judgment in favor of UPSGSC and II Morrow on Pulido's negligence claim is granted.

### 4. *Workers' Compensation Statutes*

#### a. *UPSGSC as the Employer under Ohio Law*

UPSGSC contends that the workers' compensation statute of the State of Ohio, the home state of Nichols, prevents it from being held liable because UPSGSC is an employer of Nichols.

■■■ The workers' compensation laws of the State of Ohio limit an employee's recovery against his or her employer to the remedies in the act. ORC § 4123.74. An "employer" is defined as every "person, firm, and private corporation ... that ... is bound by ... any other written contract, to pay into the insurance fund the premiums provided by this chapter." ORC § 4123.01(B)(2)(b).

■■■ Although UPSGSC is bound by the Service Agreement to "supervise" the purchase of all insurance for UPS, Inc., James Felty testified that UPSGSC has paid the workers' compensation premium for UPS, Inc. ORC § 4123.35 requires the employer to make semi-annual payments into the state insurance fund. UPSGSC has provided evidence that it does so. When interpreting a memorandum that has been previously provided to this court in a companion case, Julie Fields, an accountant for UPSGSC, states that she understands that UPSGSC makes payments for workers' compensation premiums, and UPS of America incurs ultimate financial liability. *See* Deposition of Julie Fields, pp. 16–17 (attached as Exhibit C to Declaration of Corrie Yackulic in Opposition to Motions of Defendants for Summary Judgment).

The court concludes that UPSGSC is an employer as defined by the workers' compensation laws of the State of Ohio and is entitled to the exclusivity provision of those laws. UPSGSC's motion for summary judgment against Nichols on this issue is granted.

b. *Service Organization Providing Safety Services*

UPSGSC contends that the workers' compensation statute of the State of Illinois protects it from liability for Pulido's alleged injuries because it is a service organization covered by the Illinois workers' compensation statute, 820 ILCS 305/5(a).

The Illinois workers' compensation statute provides that there is "[n]o common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or the employees of any of them for injury...." 820 ILCS 305/5(a).

■ Although UPSGSC was retained by UPS America to assist in accident prevention and safety work, its conduct during such work is not at issue in this action. The Illinois courts have noted that immunity for service organizations was added by the legislature so that these organizations would be protected when providing safety inspections, and thereby not lessen the number or the scope of the safety inspections. *Mier v. Staley*, 28 Ill.App.3d 373, 329 N.E.2d 1, 8–9 (Ill.App.1975). For this court to conclude that UPSGSC is immune from damages suits would not further the goal of providing protection during safety inspections. Summary judgment for UPSGSC based on this argument is denied.

c. *Joint Employer Doctrine*

UPSGSC contends that the workers' compensation statutes of the State of Illinois bar its liability because UPSGSC is a joint employer with UPS, Inc.

■ A person may be jointly employed by more than one employer. In those cases, both employers receive the benefit of workers' compensation immunity. Under the laws of the State of Illinois, the following factors are considered when determining if there is a joint employment relationship: "(1) who has the right to control an individual; (2) who controls the manner in which work is performed; (3) the method of payment; (4) who has the right to discharge; and (5) who furnishes the tools, materials, and equipment." *Dildine v. Hunt Transp., Inc.*, 196 Ill.App.3d 392, 143 Ill.Dec. 94, 553 N.E.2d 801, 803 (Ill.App.), *appeal denied*, 133 Ill.2d 554, 149 Ill.Dec. 319, 561 N.E.2d 689 (1990). The right to control the work is "perhaps the most important single factor." *Id.* In *Dildine*, the employee was paid by his acknowledged employer, Happy Cab; he worked in a garage provided by Hunt; and he usually performed work for Happy Cab, but at times he performed work that directly benefitted Hunt. The court held that Happy Cab and Hunt, two subsidiaries of the same parent company, were joint employers of the employee. *Id.*

■ Under the Service Agreement at issue here, UPSGSC contracted with UPS America to provide administrative and management services for UPS, Inc., the employer of the plaintiffs. The administrative and management services that UPSGSC contracted to provide to UPS, Inc. include centralized administrative functions, such as purchasing insurance, accident prevention, purchasing vehicles and other supplies, researching other equipment or techniques to improve efficiency and control costs, and to investigate problems reported by the operating companies. The services do not include line management of employees, particularly the package car drivers. Although UPSGSC contends that it has the right to control the activities of the package car drivers through its regional managers, there is no evidence that it has ever done so. Supervisors employed by UPS, Inc. direct the daily activities of the package car drivers. There is no evidence that UPSGSC controls the manner in which the package car drivers perform their work. Based upon the language of the Service Agreement, the plaintiffs have raised an issue of material fact as to whether UPSGSC has the right to control the pack-

age car drivers or the right to discharge them.

Continuing to the other factors, UPSGSC does not compensate the plaintiffs. UPSGSC does coordinate the purchase of the equipment used by the plaintiffs, including the DIADs involved in this case. UPSGSC does not retain ownership of the equipment or the DIADs used by the plaintiffs. It transfers ownership of the equipment and the DIADs used by the plaintiffs to UPS, Inc. Thus, UPSGSC acts more as a vendor than as a rental company which furnishes equipment to UPS, Inc.

The court concludes that there is a factual issue as to whether UPSGSC is a joint employer of Pulido. The motion of UPSGSC for summary judgment based on this argument is denied.

5. *Strict Product Liability and Stream of Commerce*

UPSGSC and II Morrow contend that the laws of strict product liability should not be applied to them because they have never put DIADs or DVAs into the stream of commerce, and, thus, they are not sellers under the law.

■ The product liability laws of the State of Ohio are contained in ORC §§ 2307.71 *et seq.* The statute provides as follows:

> "Manufacturer" means a person engaged in a business to design, formulate, produce, create, make, construct, assemble, or rebuild a product or a component of a product. ORC § 2307.71(I).
> "Supplier" means, subject to division (P)(2) of this section, either of the following:
> (a) A person that, in the course of a business conducted for the purpose, sells, distributes, leases, prepares, blends, packages, labels, or otherwise participates in the placing of a product in the stream of commerce;
> (b) A person that, in the course of a business conducted for the purpose, installs, repairs, or maintains any aspect of a product that allegedly causes harm.

ORC § 2307.71(P)(1). To determine if an entity is a supplier, the question is whether the defendant facilitated placing the product in the stream of commerce. *Welch Sand & Gravel, Inc. v. O & K Trojan, Inc.*, 107 Ohio App.3d 218, 668 N.E.2d 529, 536 (Ohio App. 1st Dist.1995).

■ The State of Illinois has adopted the Restatement (Second) of Torts § 402A (1965), which states: "(1) One who sells any product in a defective condition unreasonably dangerous to the user ... is subject to liability ... if (a) the seller is engaged in the business of selling such a product...." *Hammond v. North Am. Asbestos Corp.*, 97 Ill.2d 195, 73 Ill.Dec. 350, 454 N.E.2d 210, 215 (Ill.1983). All people in the distributive chain are strictly liable for injuries from a defective product because these people are in a position to exert pressure on the manufacturer to enhance the safety of the product. *Hammond*, 73 Ill.Dec. 350, 454 N.E.2d at 216.

■ Many of the cases cited by the parties are either distinguishable factually, such as when a company designs equipment which injures its own employees, or have similar facts but analyze a different legal issue, such as the doctrine of joint employers or dual capacities. UPSGSC and UPS, Inc. are two separate corporate entities: UPS, as a generally-known corporate identity, is in the business of delivering packages; it is not in the business of selling DIADs. The different corporations within the corporate structure have distinct functions. UPS, Inc., which employs the package car drivers, is in the business of delivering packages. UPSGSC does not deliver packages; it is in the business of providing administrative functions, including equipment such as the DIADs. II Morrow has the single administrative function of providing such equipment. Although UPSGSC is not organized as a profit center, there is an inference that DIADs are transferred from UPSGSC to UPS, Inc. This court concludes that there is a factual issue as to whether UPSGSC and II Morrow put the DIADs into the stream of commerce, and as to whether they are strictly liable under product liability laws. As a consequence, the court denies summary judgment on this basis.

### 6. *Negligence*

II Morrow contends that it cannot be found negligent because it provided limited consulting and assembly services concerning the DIADs and the DVAs and, thus, does not owe a duty to the plaintiffs. The plaintiffs contend that II Morrow designed and manufactured the DIAD IA–1 and consequently was sufficiently involved to owe a duty to the plaintiffs.

The record before the court shows that II Morrow was involved, to some extent, with the design and manufacture of some of the DIAD models. The court cannot determine on the record before it, and as a matter of law, that II Morrow's involvement was limited to the extent that it would not give rise to a duty owed to the plaintiffs. Accordingly, the motion for summary judgment against the negligence claim alleged against II Morrow will be denied.

### CONCLUSION

The motion for summary judgment against plaintiff Richard Nichols by defendant Inforite Corp. (# 43) is denied.

The motion for summary judgment against plaintiff Richard Nichols by defendant Toppan Moore Co., Ltd. (# 54) is denied.

The motion for summary judgment against plaintiff Richard Nichols by defendants United Parcel Service General Services Co. and II Morrow, Inc. (# 44) is granted as to United Parcel Service General Services Co. and denied as to II Morrow, Inc.

The motion for summary judgment against plaintiff Saul Pulido by defendants United Parcel Service General Services Co. and II Morrow, Inc. (# 48) is granted as to the negligence claim. The motions for summary judgment of defendants Toppan Moore Co., Ltd. and Inforite Corp. are also granted as to the negligence claim of plaintiff Saul Pulido.