532 S.E.2d 1

**Mark GRILLO, Appellant,**

v.

**SPEEDRITE PRODUCTS, INC., Ready Mark Company and Columbia Marking Products, Inc., Defendants,**

of whom Columbia Marking Products, Inc., is the Respondent.

No. 3168.

Court of Appeals of South Carolina.

Heard Jan. 12, 2000.

Decided May 22, 2000.

Rehearing Denied July 15, 2000.

Jefferson D. Turnipseed, of Turnipseed & Associates, of Columbia; and Peter J. Tepley, of Southern Poverty Center, of Montgomery, Alabama, for appellant.

Robert A. McKenzie and Robert M. Cook, II, both of McDonald, McKenzie, Rubin, Miller & LyBrand, of Columbia; and S. Jahue Moore, of Kirkland, Wilson, Moore, Allen & Taylor, of West Columbia, for respondent.

HOWARD, Judge:

This personal injury action involves application of the statute of limitations to an alleged toxic exposure case. The circuit court granted summary judgment to Columbia Marking Products, Inc., concluding the three year statute of limitations barred Mark Grillo's causes of action for negligence *per se,* strict liability, and negligent failure to warn. Grillo appeals. We reverse and remand.

## FACTUAL/PROCEDURAL BACKGROUND

Mark Grillo was employed by the Kroger Sav–On food store. As part of his duties, Grillo painted banners and signs for the store one day a week. Kroger purchased Speedrite Instant Dry Ink from Columbia Marking Products, Inc. (CMP), and beginning in February of 1992, Grillo used the Speedrite Ink to paint the store banners. The ink bottle's label did not list its contents. However, the label stated the ink should not be used near open flames and should be used in "well ventilated areas to avoid breathing a heavy concentration of fumes."

In his deposition, Grillo testified he experienced symptoms of dizziness, headache, and euphoria when using the Speedrite Ink. The symptoms were temporary, usually lasting the day he used the product, and often into the next day. He started to affirmatively associate the symptoms with the product in May of 1992. Shortly thereafter, Grillo asked store managers if the Speedrite Ink was safe and whether the store had been given a Material Safety Data Sheet on it. The store did not have the product safety information.

Grillo continued to periodically use the Speedrite Ink until December 14, 1992. On that day, while using the ink, he experienced more pronounced symptoms. Grillo described the symptoms as "stinging and cloudy eyes, ringing in my ears, flushed face, dizziness, feeling faint, bodily tremors, not being able to stand up straight, [and] severe pounding headache." Grillo advised the assistant store manager he would not use the ink again. His symptoms did not subside after this occurrence, but persisted beyond the next day.

On December 19, 1992, Grillo visited a doctor. He previously suffered from and was treated for an anxiety disorder to

which he partly attributed his extreme nervousness and head-aches. However, Grillo notified the doctor about the ink. He was advised to avoid the product and excused from work for approximately two weeks.

While being examined on January 3, 1993, Grillo showed a bottle of the Speedrite Ink to a different doctor. According to Grillo, this doctor telephoned a poison control office and requested that the office contact Speedrite Products Inc., the manufacturer of the ink. Through this method, Grillo first learned that the toxic substance toluene was an ingredient in the Speedrite Ink. On April 1, 1993, Grillo was diagnosed with acute transient narcosis secondary to toxic solvent exposure.

On December 6, 1995, Grillo served a complaint alleging causes of action for negligence and strict liability against CMP.[1] Specifically, Grillo alleged the label on the Speedrite Ink bottle failed to comply with the Federal Hazardous Sub-stance Labeling Act and failed to adequately warn a user of the dangers associated with the product. As a result, Grillo alleged that he sustained permanent injuries to his immune and nervous systems as a result of exposure to toluene.

The trial court granted CMP's summary judgment motion. The court held Grillo's causes of action were barred under the statute of limitations because Grillo either knew or should have known no later than May of 1992 that he had a potential cause of action against the company. In reaching this conclu-sion, the court noted Grillo's deposition testimony established he knew by May of 1992 that the Speedrite Ink was causing him problems.

## STANDARD OF REVIEW

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. The evidence and inferences which can be reasonably drawn are to be viewed in the light most favorable to the non-moving party. *Baird v. Charleston County*, 333 S.C. 519, 511 S.E.2d 69 (1999). All ambiguities, conclusions, and inferences arising from the evi-

---

1. The complaint also named Speedrite Products Inc. and Ready Mark Company as defendants. No issues involving these defendants are before this court.

dence must be construed most strongly against the movant. Even when there is no dispute as to the evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied. However, when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, summary judgment should be granted. "If triable issues exist, those issues must go to the jury." *Young v. S.C. Dep't of Corrections,* 333 S.C. 714, 718, 511 S.E.2d 413, 415 (Ct.App.1999).

## DISCUSSION

### I.

Grillo argues, considering the facts in a light most favorable to him, that CMP was not entitled to summary judgment as a matter of law where reasonable minds could differ on when he knew or should have known he had a cause of action against CMP. We agree.

 The elements of a cause of action in tort for personal injury are (1) duty, (2) breach of that duty, (3) proximate causation, and (4) injury. *Shipes v. Piggly Wiggly,* 269 S.C. 479, 238 S.E.2d 167 (1977). By statute, an action for personal injury must be commenced within three years after the cause of action shall have accrued. S.C.Code Ann. § 15–3–20 and 15–3–530(5) (1976 and Supp.1999). "The fundamental test ... in determining whether a cause of action has accrued[ ] is whether the party asserting the claim can maintain an action to enforce it." *Brown v. Finger,* 240 S.C. 102, 111, 124 S.E.2d 781, 785 (1962). Stated differently, "[a] cause of action accrues at the moment when the plaintiff has a legal right to sue on it." *Id.*

Our legislature modified the application of the general rule of accrual to personal injury actions by statutorily imposing the "discovery rule." As enacted, all actions initiated under section 15–3–530(5) "must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action." S.C.Code Ann. § 15–3–535 (Supp.1999). In construing the "reasonable diligence" requirement, our supreme court stated:

The exercise of reasonable diligence means simply that an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist. The statute of limitations begins to run from this point and not when advice of counsel is sought or a full-blown theory developed.

*Snell v. Columbia Gun Exchange Inc.*, 276 S.C. 301, 303, 278 S.E.2d 333, 334 (1981) (An accidental and unexplained discharge of a pistol places the injured party on notice that a defect in the weapon is possible.).

■ A key element in the reasonable diligence test is "notice." The fact that an injured party may not comprehend the full extent of the damage is immaterial. *Dean v. Ruscon Corp.*, 321 S.C. 360, 468 S.E.2d 645 (1996) (Trial court correctly granted directed verdict for defendant where plaintiff testified she saw crack in her building and, at that time, believed it resulted from pile driving activities of defendant.). More recently, the supreme court has explained that "[i]n a negligence action, the statute of limitations accrues at the time of the negligence or when the facts and circumstances would put a person of common knowledge on notice that there might be a claim against another party." *True v. Monteith*, 327 S.C. 116, 119, 489 S.E.2d 615, 616 (1997) (citing *Kreutner v. David*, 320 S.C. 283, 465 S.E.2d 88 (1995)). Under section 15–3–535, the statute of limitations is triggered not merely by knowledge of an injury, but by knowledge of facts, diligently acquired, sufficient to put a person on notice of the existence of a cause of action against another. *Id.* This is an objective, not a subjective, determination. *Wiggins v. Edwards*, 314 S.C. 126, 442 S.E.2d 169 (1994).

## II.

Our courts have not addressed the application of the discovery rule in an analogous context. However, in the context of a latent occupational disease, the District Court for the District of South Carolina considered the application of the statute of limitations in *Hinson v. Owens–Illinois Inc.*, 677 F.Supp. 406 (D.S.C.1987). In *Hinson*, the district court granted the defen-

dants' motion for summary judgment. Recognizing that the development of asbestosis takes place over a period of time, the court looked at the information available to the plaintiff over a number of years concerning his exposure to asbestos material and his medical condition. Finally, the court concluded that, at the latest, as of the time the plaintiff underwent a CAT scan which positively revealed asbestosis, a person of common knowledge and experience would have been on notice that some right of his had been invaded.

The court rejected the plaintiff's argument that the statute of limitations did not begin to run until the date he received a definitive diagnosis of asbestosis, some two years after the CAT scan. Notably, however, the court rebuffed the defendants' contention that the plaintiff knew he suffered an actionable injury attributable to asbestos several years earlier when he was initially diagnosed by a physician with pulmonary emphysema and fibrosis. The physician expressed his opinion at that time that the pulmonary findings were due to asbestos exposure. The court concluded the physician had no proof that the pulmonary emphysema and fibrosis were caused by the plaintiff's exposure to asbestos. The court further concluded, viewed in the light most favorable to the plaintiff, that the evidence indicated the plaintiff had no medical proof that his lung condition was due to his exposure to the defendants' products at that time, making initiation of a lawsuit premature. *See generally* Joel E. Smith, Annotation, *When statute of limitations begins to run as to cause of action for development of latent industrial or occupational disease* 1 A.L.R.4th 117 (1980 and Supp.1999).

In comparison to a latent disease case, where the cumulative effects of exposure may not manifest for a period of years, this case is distinguishable. Grillo experienced temporary symptoms or discomfort almost immediately upon exposure. He also associated his symptoms, at least to some extent, with the use of the Speedrite Ink shortly thereafter. However, it was a result of the additional prolonged exposure on December 14, 1992, that Grillo allegedly suffered permanent injuries for which he now seeks damages. Applying the discovery rule in this context, the determination to be made is when temporary symptoms become an "injury" from which the surrounding facts and circumstances should put a person on notice that a

cause of action exists. *See Snell v. Columbia Gun Exchange Inc.*, 276 S.C. 301, 303, 278 S.E.2d 333, 334 (1981) ("[A]n injured party must act with some promptness where the *facts and circumstances of an injury* would put a person of common knowledge and experience on *notice* that some right of his has been invaded or that some claim against another party might exist.") (emphasis added).

In considering the relationship between temporary symptoms and the application of the discovery rule, we find some guidance in the decisions of other jurisdictions in toxic exposure and latent disease cases. New York's Court of Appeals interpreted its discovery rule to trigger the statute of limitations when the injured party discovers the primary condition on which the claim is based. *In re: New York County DES Litigation (Wetherill v. Eli Lilly & Co.)*, 89 N.Y.2d 506, 655 N.Y.S.2d 862, 678 N.E.2d 474 (1997). In *Wetherill*, the court recognized that "there may be situations in which the claimant may experience early symptoms that are too isolated or inconsequential to trigger the running of the Statute of Limitations...." *Id.* at 478, n. 4.

In *Johnson v. Exxon Corp.*, 258 A.D.2d 946, 685 N.Y.S.2d 530 (1999), a New York appellate court addressed the application of the discovery rule, as construed in *Wetherill*, in the context of an action for work-related injuries allegedly sustained from toxic exposure. In *Johnson*, the claimant in that case had experienced occasional ailments over a two-year period as a result of exposure to chemicals. In a memorandum opinion, the court determined the claimant did not "discover" the condition on which the claim was based until an occurrence when she was "overcome by fumes while working and suffered body tremors, a feeling of intoxication, a shooting pain in her head, rashes on her face and neck, and nausea." *Id.* The court determined it was at this point, when claimant could not return to work, that the statute was triggered, as opposed to previous occurrences where plaintiff suffered isolated and inconsequential symptoms. *See also O'Halloran v. 345 Park Co.*, 251 A.D.2d 260, 675 N.Y.S.2d 55 (1998), *leave to appeal dismissed*, 92 N.Y.2d 1026, 684 N.Y.S.2d 490, 707 N.E.2d 445 (1998) (The court concluded symptoms were too isolated or inconsequential to trigger statute, where claimant only missed two and a half days of work and did not seek

medical attention or file a workers' compensation claim at that time.). *Cf. Scheidel v. A.C. and S. Inc.*, 258 A.D.2d 751, 685 N.Y.S.2d 829 (1999) (Applying the discovery rule in the context of a toxic tort, the court concluded that awareness of severe and persistent manifestations of the illness of asbestosis, including increasing shortness of breath, difficulty in walking any distance, and changing the nature of employment due to onset of physical limitations, constituted discovery.)

In *Hildebrandt v. Allied Corp.*, 839 F.2d 396 (8th Cir.1987), the federal appeals court considered the application of the Minnesota statute of limitations to a case of occupational exposure to toluene diisocyanate. The plaintiffs alleged they were exposed to the product for a number of years at their workplace and, as a result, developed permanent lung damage. The federal district court granted summary judgment to the defendants based upon the statute of limitations. In this ruling, the district court rejected the plaintiffs' argument that although they were aware of the injury in the form of sensitization to the toluene product, they did not know their respiratory injuries were or could be permanent. *Id.* at 398.

The Eighth Circuit Court of Appeals reversed. The court noted the evidence demonstrated the plaintiffs manifested symptoms after their initial exposure to the product but "the evidence is questionable whether they knew or should have known those symptoms were the manifestation of harm or impairment for which they now claim damages ... or whether those symptoms were the manifestation of temporary sickness or discomfort." *Id.* The court stated:

> There is a substantial difference between knowledge of injury and the cause of that injury and mere suspicion.... The evidence shows that [the plaintiffs'] suspicions regarding their symptoms about TDI were either unconfirmed or denied at the time of their early employment with Whirlpool. If they had filed an action when they were employed at Whirlpool and complained of their symptoms, their claim may well have been dismissed as frivolous. A jury, like the plaintiffs' physicians, may have concluded that the plaintiffs' manifestations were unrelated to TDI exposure. Thus, if the plaintiffs had filed, a later cause of action could have been barred. *We do not believe Minnesota's applicable statutes of limitation were intended to provoke the prema-*

*ture commencement of claims for temporary sickness or discomfort. Rather, the plaintiffs are entitled to wait until the cause has been rationally identified.*

*Id.* at 399. (emphasis added).

The *Hildebrandt* opinion cited the case of *Schiele v. Hobart Corp.*, 284 Or. 483, 587 P.2d 1010 (1978). *Schiele* is also an occupational disease case. A meat wrapper sued for permanent injuries from alleged exposure to polyvinyl chloride fumes caused by the use of a meat wrapping machine. The trial court granted summary judgment to the defendants based upon the statute of limitations. The Oregon Supreme Court reversed and remanded for trial. Factually, the Oregon court noted the plaintiff began to experience a variety of health problems, including nausea, dizziness, choking, coughing, and difficulty catching her breath soon after she began using the meat wrapping machine. The court noted "[a]lmost from the outset, the plaintiff associated these problems with the fumes which the machine generated as its hot wire cut the polyvinyl chloride meat wrapping film." *Id.* at 1011. The plaintiff's health problems worsened until she was hospitalized approximately two years later with pneumonia. At that time, doctors informed her that her illness was possibly due to her exposure to polyvinyl chloride fumes on the job. *Id.* at 1012.

In reversing the trial court's grant of summary judgment on the statute of limitations, the Oregon Supreme Court noted "the statute of limitations on claims involving negligent infliction of an occupational disease does not begin to run until the plaintiff knows, or as a reasonably prudent person should know, that he has the condition for which his action is brought and that the defendant caused it." *Id.* at 1013. The court stated:

[W]e reject defendants' claim that knowledge of symptoms and their causal relationship to defendants' actions in and of itself initiates the running of the statute. *We do not believe the legislature intended that the statute be applied in a manner which would require one to file an action for temporary sickness or discomfort or risk the loss of a right of action for permanent injury.* The statute of limitations begins to run when a reasonably prudent person associates his symptoms with a serious or permanent condition and at the same time perceives the role which the defendant has played in inducing that condition.

*Id.* at 1014. (emphasis added). *See also Childs v. Haussecker,* 974 S.W.2d 31, 40 (Tex.1998)(In a latent occupational disease case, a cause of action accrues whenever a "plaintiff's symptoms manifest themselves to a degree or for a duration that would put a reasonable person on notice that he or she suffers from some injury and he or she knows, or in the exercise of reasonable diligence should have known, that the injury is likely work-related."); *Martinez v. Humble Sand & Gravel, Inc.,* 940 S.W.2d 139, 144 (Tex.Ct.App.1996) *aff'd,* 974 S.W.2d 31 (Tex.1998) ("[D]iscovery of the 'nature' of an injury resulting from a progressive occupational disease must include knowledge sufficient to determine whether the injury is a temporary sickness or a permanent condition." The court noted that the discovery rule should not be applied in a manner which would require one to file an action for temporary sickness or discomfort or risk the loss of a right of action for permanent injury. The court further noted, as an example, the absurdity of requiring a sandblaster, who might know that silicosis can be related to sandblasting, to file a lawsuit at the first sign of a cough in order to protect his rights in the case that he might suffer from the disease.)

### III.

■ Viewing the evidence in the light most favorable to Grillo, we conclude CMP was not entitled to summary judgment as a matter of law on the basis that Grillo should have known he had a cause of action when he associated his temporary symptoms with the use of the ink as of May 1992. We find more than one inference can be drawn as to when a reasonable person would have been on notice that he might have a cause of action against CMP. Institution of an action based upon those temporary symptoms would likely have been premature and possibly frivolous. Moreover, the permanent injuries for which Grillo now seeks recovery would not have been compensable at that time. Accordingly, a jury issue is presented as to the application of the statute of limitations in this case. *See Johnston v. Bowen,* 313 S.C. 61, 437 S.E.2d 45 (1993).

**REVERSED AND REMANDED.**

GOOLSBY and HUFF, JJ., concur.