# CIRCUIT COURT OF THE CITY OF PORTSMOUTH

Helen Johnson,
Executrix of the
Estate of Robert Johnson

v.

Norfolk Portsmouth
Belt Line Railroad Co.

October 15, 2001

Case No. CL-99-756

BY JUDGE DEAN W. SWORD, JR.

This matter comes before the court upon the motion of the defendant to dismiss this matter on the affirmative defense of the statute of limitations. Since this action is filed pursuant to the Federal Employer's Liability Act, 45 U.S.C. § 51, *et seq.* (FELA), it must be brought "within three years from the day the cause of action accrued." 45 U.S.C. § 56. This matter was filed with the court on June 15, 1999, and thus the cause of action must have accrued on or after June 15, 1996, to survive the motion.

In addition to this basic issue, the plaintiff has filed a continuing objection to the procedure adopted by the court to determine the motion.

## The Procedure

In an effort to resolve the question of whether the applicable statute of limitations had expired, the court determined that the best use of judicial resources, as well as an attempt to limit litigation expense to the respective parties, required that a hearing be held to receive evidence. The plaintiff objects to this upon two bases: (1) the process denies a right to a jury trial and (2) the court is without authority to conduct the trial in this manner. We shall address these issues in reverse.

The normal procedure used to conduct a trial in Virginia is one that has a long history firmly rooted in common law. It is generally accepted, however, that the common law remedies were too cumbersome and were replaced by our current code in 1950. (Virginia Code § 1-2.) The 1950 Code also provided that the Virginia Supreme Court could provide certain rules which also superseded the previous practice. (Virginia Code § 8.01-3.) It is interesting to note that neither the legislature nor the Supreme Court elected to set forth a "trial scenario" that must be observed by the trial court. While one should not be so arrogant to assume that a circuit court may do as it pleases, the court is of the opinion that it is free to make certain management decisions by using sound judicial discretion to solve a given problem, assuming that there is no specific rule, statute, or stare decisis that would control the issue. We are encouraged constantly to develop methods to expedite litigation, reduce costs, make more efficient use of judicial time, and create a court system that responds fairly to the public that we are employed to serve. (*State of Judiciary Report — 2000*, pp. xi-xv.)

If an issue arises that may lead to an early disposition of a case in favor of one of the parties and if a fair method can be used to present the issue to the court, then the court feels duty bound to adopt such a procedure.

The parties in this matter had conducted extensive discovery and had developed the potential evidence as to the statute of limitations issue. At the request of the defense, the court agreed to hear evidence of both parties as it related to that limited issue, we being of the opinion that the probable resolution of this issue would be of considerable value to both parties. Obviously, there was some risk that the evidence might not reach the level required (no material fact is genuinely in dispute); however, a final resolution of this issue early in the trial is desirable, if possible.

Finally, the court finds precedent for such a procedure in the criminal law where motions to suppress evidence are routinely conducted as a preliminary to trial. Rule 3A:9(a)(2).

With the ruling by the court that its findings and decision on this issue were to be final and not subject to relitigation later (assuming the court finds adequate evidence to rule), we go forward.

The second objection raised by the plaintiff is that the issue of the statute of limitations must be decided by a jury.

The right to a trial by jury in a civil case is one provided by the Constitution of Virginia in Article I, § 11. However, not every issue in a civil case must be decided by a jury and our rules provide for the court to enter summary judgment as long as no "material fact is genuinely in dispute." Rule 3:18. Further, the court in ruling upon such a motion, must adopt a view of the

facts and all reasonable inferences to be drawn from them that favors the nonmoving party. *Carson ex rel. Meredith v. LeBlanc*, 245 Va. 135, 139, 427 S.E.2d 189 (1993); *Bloodworth v. Ellis*, 221 Va. 18, 23, 267 S.E.2d 96 (1980).

## The Statute of Limitations

It is absolutely clear that the alleged injuries to the plaintiff were occupational in nature and developed over the period of his employment with the defendant. (T. 6: complaint relating to his knee as early as 1992.) Thus we have no evidence that would establish the injury on a date certain and would lead to an easy resolution of our question.

This being the case, how do we determine when the statute began to run? Keeping in mind that the "F" in FELA stands for "federal," we are obliged to look to appropriate applicable cases decided by the United States Supreme Court as a starting point.

The seminal FELA case of *Urie v. Thompson*, 337 U.S. 163, 93 L. Ed. 1282, 69 S. Ct. 1018 (1949), considered the issue of the accrual of a cause of action based upon its later manifestation.

Urie was an employee of the Missouri Pacific Railroad, and, in 1941, he filed a suit under the FELA seeking compensation for a silicosis condition that forced him out of work in 1940. Prior to 1940, he had worked for the railroad as a fireman for approximately thirty years. While this case is cited for a number of issues, the court began by stating the first issue to be decided was "whether . . . that claim is barred . . . by operation of the Federal Employer's Liability Act's statute of limitations." *Id.* at p. 168. The defendant argued that "Urie, having been exposed to silica dust since . . . . 1910 . . . his 'cause of action' must . . . have accrued longer than three years" before filing suit. Urie argued that "each inhalation . . . was a separate tort giving rise to a fresh 'cause of action'" which gave him a claim for the period beginning in 1938 and ending with the 1940 incapacity. *Id.* at p. 169. The Supreme Court rejected both theories advanced by the parties. (*Id.* pp. 169-170.) Citing with approval a California case involving worker's compensation, the Supreme Court said:

> that no specified date of contact with the substance can be charged with being the date of injury, inasmuch as the injurious consequences of the exposure are the product of a period of time; consequently, the afflicted employee can be held to be injured only when the

accumulated effects of the deleterious substance manifests themselves. . . .

*Urie* at p. 170 (internal quotation marks and citation omitted).

Since 1949, the Supreme Court has not modified *Urie*; however, it has extended the same rule to federal medical malpractice. See *United States v. Kubrick*, 444 U.S. 111, 62 L. Ed. 2d 259, 100 S. Ct. 352 (1979).

Marching to the *Urie* drum, several federal appellate courts have considered the issue in other occupational scenarios.

The initial case of note is *Fries v. Chicago & Northwestern Transportation*, 909 F.2d 1092 (7th Cir. 1990). Fries, an employee of the railroad, filed an FELA action seeking compensation for a hearing loss. The evidence revealed that he was employed from April 1969 through September 1987 as a machinist. Between 1980 and 1982, Fries began to notice problems with his hearing; however, he denied any knowledge that they may have been work-related. The court did observe, however, "they [Fries and his wife] could not ascribe the hearing loss to a cause other than work . . . they suspected he had a hearing loss as far back as 1980 and 1981. At no time did [he] inform the railroad . . . nor did he seek medical treatment . . . until . . . May 1985 . . . was he diagnosed by a physician with hearing loss. . . ." *Id.* at p. 1094. The suit was filed on November 18, 1987, alleging negligent exposure to loud industrial noise and a failure to provide ear protection. The defendant argued a statute of limitations defense claiming the "cause of action accrued in 1980 or 1981 when the . . . occupational disease became known . . . and when he should have reasonably known the injury was work-related." *Fries*, p. 1094. The plaintiff argued for the diagnosis date of 1985.

While this was an appellate review of a motion granting the defendant summary judgment by a U.S. District Court, the standard of review has a familiar ring:

> to affirm we must find (1) that the statute of limitations has run and (2) there exists no genuine issue of material fact as to when the plaintiff's cause of action accrued.

*Id.* at p. 1094.

Citing *Urie, supra*, as the bench mark, the court went on to observe "That a cause of action accrues . . . when a reasonable person knows or in the exercise of reasonable diligence should have known of both the injury and its governing cause." Both elements "require an objective inquiry" into what the plaintiff knew, but "the injured plaintiff need not be certain which cause, if

many are possible, is the governing cause." Going further, the court observed that the rule imposes on the plaintiff "an affirmative duty to investigate the potential cause of his injury." *Id.* at p. 1095.

The *Fries* opinion also rejected two alternative theories: (1) even though the condition develops over time, the statute is not tolled until the date of actual diagnosis and (2) actual knowledge of the causation is not required. *Id.* at pp. 1095-96.

For cases following this rule, see *Johnson v. Norfolk & Western Ry.*, 836 S.W.2d 83, 85-86 (Mo. App. E.D. 1992); *Monarch v. Southern Pacific Transportation Co.*, 70 Cal. App. 247, 251 (Cal. App. 2 Dist. 1999); and *Grillo v. Speedrite Products, Inc.*, 340 S.C. 498, 532 S.E.2d 1, 6 (S.C. App. 2000), citing the rule with approval but denying the motion of the defendant on the facts.

We then come to what the plaintiff categorizes as a "landmark decision," *Gay v. Norfolk Southern Ry.*, 253 Va. 212, 483 S.E.2d 216 (1997). Gay filed an FELA action seeking compensation for a form of leukemia alleged to have been caused by his on the job exposure to diesel fumes and exhaust from locomotives. Evidence revealed that the plaintiff had been employed by the railroad from September 1956 to December 1993. Norfolk Southern claimed that the cause of action arose in 1989 when his leukemia was diagnosed.

It should be noted that *Gay* is actually decided upon the application of Rule 3:18 and Virginia Code § 8.01-420 to the procedure followed by the trial court in using depositions as evidence without the consent of the plaintiff. The Virginia Supreme Court went further "however, because Gay's claim relating to the method of determining the accrual date of his cause of action will arise on remand. . . ." *Id.* at p. 215.

In moving over to the issue of when the cause of action accrues, the court observes that the rule applied by the federal courts "is that the cause of action accrues when the employee 'knows or should know' that he was injured and that the injury was work related." *Id.* at p. 215 (citing *Urie, supra*, and three cases decided by the Fourth Circuit).

While the opinion does not directly so state, it appears that the Virginia Supreme Court acknowledges that the *Urie, supra*, rule is the one to be applied in FELA cases. The court then goes on to review the defense argument and the cases cited in support of that argument. Rather than developing a new rule for Virginia, the court distinguishes these cases upon the facts.

Finally the Court opines:

An employee's mere suspicion of an injury or its probably cause, standing alone, is not the operable standard for determining when a

cause of action accrues under FELA. Rather, all the relevant evidence must be considered. .... On remand, considering all the relevant evidence, if reasonable persons could disagree about when Gay "knew or should have known" that his injury was work-related, the issue should be submitted to the jury. It is improper, however, to resolve the issue solely on the basis that an employee suspected that his illness was work-related.

*Id.* at p. 216.

With all due respect to the plaintiff, this court sees nothing "landmark" about this case. Our Supreme Court restates the *Urie, supra,* rule and then emphasizes that, before the issue can be taken away from a jury, "no material fact is genuinely in dispute." (See the discussion of Rule 3:18 *supra.*)

Having now arrived at the legal standard to be applied, we must look at the evidence that is before the court. In considering what the court views as a motion for summary judgment upon the defense of the expiration of the statute of limitations, we can consider the responses by the plaintiff to the defendant's request for admissions and the evidence presented at the hearing held on August 14, 2001. Pursuant to Rule 4:11(b) and (d), on the motion of the defendant, the court deems any matter admitted to be conclusively established for the purposes of this motion. (T. p. 4.) The court will also make reference to the transcript of the hearing which is also a part of this trial record.

A review of the answers to the admissions request provides only limited information, the names of the two doctors who provided treatment to the plaintiff. They are David L. Durica, M.D., and S. Brittman, M.D. (See questions 6 and 7.)

The first witness called to testify was Stanley Louis Brittman, M.D. Dr. Brittman, a Board Certified Practitioner of Family Medicine, began treating the plaintiff in 1980. (T. p. 5.) The initial complaint made by Johnson to the doctor regarding his left knee was documented on November 9, 1992. At that time, Johnson related walking "five miles per day for the railroad." His diagnosis was either "a blood clot verses some arthritis of the knee." (T. pp. 6-7.) To confirm his diagnosis, Dr. Brittman ordered a vascular study, which eliminated the possibility of a blood clot. (T. p. 7.) Johnson was seen again by the doctor on December 9, 1992, at which time, his symptoms were resolving. (T. p. 9.)

The left knee problem was next presented to Dr. Brittman on July 27, 1994, at which time, it was again noted about his walking on "gravel at railroad." On this occasion, the diagnosis was "osteoarthritis of the left knee and heel spur bursitis." (T. p. 10.) Almost one year later on July 11, 1995, the

plaintiff presented another complaint about left knee pain, and again notation about his occupation was made. July 28, 1995, saw Mr. Johnson back at his doctor complaining that his "knee aches in the morning and increased stiffness and pain increases with walking. Job requires walking on gravel, jumping, and climbing . . . conductor on railroad." The diagnosis was "arthritis." (T. pp. 11-12.) Finally, on May 28, 1996, Dr. Brittman referred Johnson to Dr. Durica because of the continuing knee pain. (T. pp. 16-17.)

The cross-examination of the doctor revealed some other information that the court finds most interesting. He had a number of other injuries to his left knee on the railroad: "April 11, 1989, slid down an embankment . . . April 20, 1988, he stepped in a hole and twisted his left knee . . . January 8, 1988 . . . fell . . . and injured his left knee . . . September the 18, 1987, he injured his left leg near ankle . . . September 16, 1980, he struck his left knee on an engine." All of which the doctor opined "would aggravate arthritis." (T. pp. 19-20.)

The second witness called by the defense was David Louis Durica, M.D., a Board Certified Orthopedic Surgeon, who began treating the plaintiff as of July 22, 1996. (T. p. 36.) As a part of his initial evaluation of Johnson, Dr. Durica's office obtained a medical history, where he related that his "left knee hurts all the time" and was painful when he walked. (T. p. 43.) The symptoms had existed for "three years." (T. p. 45.)

The final witness was Helen Johnson, the wife of our deceased plaintiff. On direct examination by her counsel, she was asked if her husband knew what caused his knee problem. Her answer is telling: "Well, he had hurt his leg out there many times. He had fallen a couple of times. Surely somewhere in the conversation he had mentioned maybe it's because I'm still hitting that knee." (T. pp. 69-70.)

Upon a review of this extensive testimony, the court comes to the following conclusions.

Dr. Durica actually notified the plaintiff as to the causal relationship of his condition with his employment; however, this did not occur until July 22, 1996, at the earliest and would be within the statute of limitations.

Dr. Brittman was aware of the occupational activities of Johnson as early as November 1992, and they were again brought to his attention in July 1994 and July 1995.

Johnson obviously was aware of the physical things that he did at work, and, giving him the benefit of all possible doubt, it can be said that he was equating an increase in pain while walking, something he did extensively as a part of his job, no later than July 28, 1995.

Johnson was also aware of numerous other injuries to his left leg that were traumatic in nature and were "on the job" injuries. These injuries had occurred in the 1980's before he began with his complaints to Dr. Brittman. Dr. Durica opined that these could exacerbate his condition.

No later than July 27, 1994, Dr. Brittman made his osteoarthritis diagnosis and began prescribing medication to treat the condition. Johnson took the medication at least intermittently until he was referred to Dr. Durica in July 1996.

Again on July 28, 1995, Johnson was seen by Dr. Brittman and was again diagnosed with arthritis and treated with medication.

While the testimony of Mrs. Johnson was somewhat vague, there is evidence that her husband was equating leg pain with his railroad employment while he was being treated by Dr. Brittman. The absolute last visit with Dr. Brittman was documented as being May 28, 1996.

Thus, we ask the essential question: did Johnson know or should he have known that the injury to his left knee was work-related, did he acquire that knowledge prior to June 15, 1996, and could reasonable persons disagree about our answer based upon this evidence.

The facts we have recited establish that Johnson had a long history of work-related injuries to his left knee. These injuries made him seek medical advice and, while in the early stages of treatment with Dr. Brittman the issue was uncertain, he continued to have recurring problems that grew worse and were aggravated by his occupational activities. He received the same diagnosis from both doctors and clearly the condition had manifested itself by July 1995. The record is also silent as to any other non-occupational events that might have occurred to cause Johnson to attribute his problem somewhere else.

In short, the court is of the opinion that a reasonable person could only come to the conclusion that, by July 1995, Johnson had to know or reasonably should have known that his occupational activities were causing his medical condition.

This date being more than three years prior to the filing of this lawsuit, the court finds the claim barred by the statute of limitations.